**VARIETY CHILDREN'S HOSPITAL, INC., d/b/a Miami Children's Hospital, a licensed hospital facility and non-profit organization, Plaintiff,**

v.

**BLUE CROSS/BLUE SHIELD OF FLORIDA, a domestic insurer licensed and registered to do business in the State of Florida, and Lil' Champ/Jiffy Stores, Inc., a domestic corporation authorized to do business in the State of Florida, Defendants.**

**Lynda YODER, Plaintiff,**

v.

**APPLIED BENEFITS RESEARCH, INC., d/b/a CobraServ, Inc., a New Jersey corporation, Blue Cross and Blue Shield of Florida, a Florida corporation, and Lil' Champ Food Stores, Inc., a Florida corporation, Defendants.**

Nos. 95–500–CIV, 95–843–CIV.

United States District Court,
S.D. Florida,
Miami Division.

July 29, 1996.

---

Michael R. Presley, Coral Gables, FL, Alan Braverman, Fort Lauderdale, FL, for plaintiff.

Paul J. Geller, Proskauer, Rose, Goetz & Mendelsohn, Boca Raton, FL, David James, Smith, Kaufman, Miller, Dickstein & Gruspan, PA, Miami, FL, William E. McIntyre, Bunnell, Woulfe, Kerschbaum, Keller & McIntyre, Fort Lauderdale, FL, for defendants.

*OMNIBUS ORDER ON DEFENDANTS' MOTIONS TO DISMISS*

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon the following motions:

1. Defendant Lil' Champ's motion to dismiss amended complaint (Case No. 95–500, DE # 18);

2. Defendant Blue Cross and Blue Shield of Florida's motion to dismiss amended complaint (Case No. 95–500, DE # 22);

3. Defendant CobraServ's motion to dismiss amended complaint (Case No. 95–500, DE # 38; Case No. 95–843, DE # 48);

4. Defendant Blue Cross and Blue Shield of Florida's motion to dismiss amended complaint (Case No. 95–500, DE # 39; Case No. 95–843, DE # 49);

5. Defendant Lil' Champ's motion to dismiss amended complaint (Case No. 95–500, DE # 61; Case No. 95–843, DE # 46).

THE COURT has considered the Motions, responses and the pertinent portions of the record, and being otherwise fully advised in the premises, it enters the following Order.

## BACKGROUND

### I. Procedural Background

The above-captioned cases arise out of the same facts and have been consolidated for trial. In case number 95–500–CIV–MOORE, the plaintiff is Variety Children's Hospital, Inc., d/b/a MIAMI CHILDREN'S HOSPITAL ("Variety") and the defendants are Blue Cross/Blue Shield of Florida ("BC/BS") and Lil' Champ/Jiffy Stores, Inc. ("Lil' Champ"). Variety's amended complaint alleges the following two causes of action: (1) breach of contract against Lil' Champ; and (2) promissory estoppel against BC/BS.

In case number 95–843–CIV–MOORE, the plaintiff is Lynda Yoder ("Yoder") and defendants are Applied Benefits Research, Inc., d/b/a CobraServ, Inc. ("CobraServ"), BC/BS, and Lil' Champ. Yoder originally commenced her action in state court asserting claims for (1) breach of contract; (2) promissory estoppel; (3) bad faith refusal to pay; (4) intentional infliction of emotional distress; and (5) fraud. Yoder's case was removed to federal court on the basis that her claims were governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Upon removal, Yoder conceded that her state law claims were preempted by ERISA and moved to file an amended complaint. On June 22, 1995, Yoder filed her amended complaint alleging the following five causes of action: (1) breach of contract against Lil' Champ and BC/BS; (2) breach of contract against CobraServ; (3) promissory estoppel against BC/BS and CobraServ; (4) waiver against BC/BS and CobraServ; and (5) violation of Fl.Stat. § 627.6575 against CobraServ, BC/BS and Lil' Champ.

### II. Factual Background

Plaintiff Lynda Yoder was an employee at Lil' Champ from October 1989 until October 1992. Yoder had health insurance coverage under Lil' Champ's group health insurance policy with BC/BS (the "Plan"). Following her termination at Lil' Champ, Yoder elected

to continue the same coverage pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1161 *et seq.* BC/BS contracted the services of Defendant CobraServ to administer COBRA coverage for qualified employees.

On or about December 31, 1992, Yoder, who was approximately six months pregnant, was involved in an automobile accident. Yoder alleges that, as a direct and proximate result of the automobile accident, she went into premature labor on January 7, 1993 and delivered her son Todd J. Yoder, Jr. ("Todd"). Todd required extensive medical treatment, which Variety provided, and eventually died on February 26, 1993. Variety alleges that, prior to commencing care and treatment to Todd, Yoder executed an assignment of benefits and assigned to Variety all rights to receive benefits due under the Plan. Variety also alleges that it received pre-certification of coverage and pre-authorization for admission from BC/BS prior to commencing care and treatment to Todd.

Yoder concedes that prior to Todd's birth, she had employee only coverage. Yoder, however, alleges that she telephoned CobraServ regarding her coverage and was informed by a representative that her unborn baby was covered under the Plan. Yoder alleges that the CobraServ representative also told Yoder that she should contact CobraServ again after the baby's birth. Yoder alleges that she telephoned CobraServ after Todd's birth and again confirmed coverage.

Alleging that the care and treatment provided to Yoder and her son were covered under the BC/BS health insurance policy, Yoder contends that she timely filed claims with the Defendants. Yoder alleges that the defendants wrongfully denied her claims. Yoder further alleges that, even though she disputed the denial of her claim, she continued to tender the monthly premiums due under the health insurance policy. Yoder alleges that CobraServ accepted and acknowledged receipt of the monthly premiums. Yoder further alleges that Lil' Champ and BC/BS wrongfully canceled and repudiated the insurance policy in May 1993 and returned the premiums they had previously received from Yoder.

## DISCUSSION

### I. Motion to Dismiss Standard

There are presently several motions to dismiss before the Court. Before turning to the arguments set forth in these motions, the Court notes that it must construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true when considering a motion to dismiss. *See SEC v. ESM Group, Inc.,* 835 F.2d 270, 272 (11th Cir.), *cert. denied sub nom. Peat Marwick Main & Co. v. Tew,* 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988). The court further notes that it should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (citations omitted); *The South Florida Water Management Dist. v. Montalvo,* 84 F.3d 402, 406 (11th Cir.1996).

### II. Variety's Amended Complaint

#### A. Count I: "Breach of the Insurance Contract"

■ Count I of Variety's amended complaint is against Lil' Champ and is labeled "breach of the insurance contract." Lil' Champ moves to dismiss Count I on the basis that ERISA preempts state law claims, such as a breach of contract claim, and relies on § 514(a) of ERISA, 29 U.S.C. § 1144(a). Variety counters that Count I is not preempted by ERISA because it is really an ERISA claim pursuant to § 502(a)(1)(B) of ERISA. 29 U.S.C. § 1132(a)(1)(B).

■ It is true that ERISA preempts state law claims, including claims based on breach of contract. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 57, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987). Section 514(a) of ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has stated that ERISA is "conspicuous for its breadth." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474,

483 (1990); *see also Willett v. Blue Cross & Blue Shield*, 953 F.2d 1335, 1341 (11th Cir. 1992). Therefore, ERISA preempts all state laws that impact on the administration of an employee benefit plan. *Jackson v. Martin Marietta Corp.*, 805 F.2d 1498 (11th Cir.1986) (per curiam).

However, § 502(a)(1)(B) of ERISA provides a cause of action for participants or beneficiaries under a plan.[1] Specifically, that section provides that "[a] civil action may be brought (1) by a participant or beneficiary ... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under his plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Variety alleges that it is a beneficiary under the plan pursuant to the assignment of rights executed by Yoder. Variety also alleges that Count I "is an action based upon federal question jurisdiction and for a breach of a group insurance contract governed by ERISA." Based on a review of Variety's amended complaint, the Court finds that Variety seeks relief pursuant to § 502(a)(1)(B) of ERISA. Accordingly, Count I of Variety's amended complaint, albeit unartfully labeled, will not be dismissed.

### B. Count II: Promissory Estoppel

■ Count II of Variety's amended complaint is an estoppel claim against BC/BS. In its amended complaint, Variety alleges that it obtained from BC/BS pre-authorization for admission and pre-certification of coverage for Todd prior to admitting him on January 7, 1993. Variety Amended Com-

plaint ("Variety Am.Cmplt."), ¶ 19. Variety further alleges that, in reliance upon the pre-authorization and pre-certification, it admitted Todd and provided him with medically necessary care and treatment. Variety Am. Cmplt., ¶ 21. Variety also alleges that, during the admission of Todd, BC/BS never withdrew its previous authorization or certification. Variety Am.Cmplt., ¶ 22. Variety alleges that, despite the continued authorization and certification, BC/BS refused to pay, with the exception of one payment, Variety for the medical and hospital related services it rendered to Todd. Variety Am.Cmplt., ¶ 24.

BC/BS argues that Variety has failed to allege the requisite elements of a promissory estoppel claim. In support of its argument, BC/BS cites to a number of cases which discuss the doctrine of equitable estoppel under federal common law.[2] The Court finds that these cases are not applicable in this instance insofar as Variety's claim is based on state law rather than federal common law.

■ The issue is whether Variety's promissory estoppel claim is preempted by ERISA; specifically, whether Variety's state law claim relates to the Plan. As stated above, Section 514(a) of ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Whether a state law relates to an ERISA plan requires a determination of whether the state law "has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). The mere mention of an

---

1. The Court notes that many of the allegations in an ERISA claim will be similar to the allegations in a state law breach of contract claim. This is so because, in a § 502(1)(1)(B) claim, a participant or beneficiary under a plan commences an action to assert his or her contractual rights under a plan and alleges that the defendant failed to abide by the terms of the plan. *See, e.g., Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1133 (7th Cir.1992) (citation omitted).

2. The terms "promissory estoppel" and "equitable estoppel" are often used interchangeably. The two estoppel principles are essentially the same in they exist "when the conduct of one party has induced the other party to take a position that would result in harm if the first party's

act were repudiated." *Pitts by and Through Pitts v. American Sec. Life*, 931 F.2d 351, 357 (5th Cir.1991) (citation omitted). It appears that promissory estoppel, unlike equitable estoppel, requires that the party seeking to invoke the estoppel doctrine establish a promise. *See Ludwig v. NYNEX Service Co.*, 838 F.Supp. 769, 793 n. 45 (S.D.N.Y.1993).

The question of whether Variety's promissory estoppel claim is grounded in state law or federal common law is important in an ERISA analysis. State laws that relate to an ERISA plan are preempted whereas federal common laws are cognizant under ERISA. This distinction will be discussed in greater detail in Section III.C., *infra*.

ERISA plan in a complaint is not, in and of itself, sufficient, to warrant a finding that the state law relates to a plan. *Hospice of Metro Denver v. Group Health Ins.*, 944 F.2d 752, 754 (10th Cir.1991).

■ Although a state law may have a connection to an ERISA plan, its relation may be "too tenuous, remote, or peripheral in manner to warrant a finding that the law relates to a plan." *Id.* at 100 n. 21, 103 S.Ct. at 2901 n. 21. If a state law "does not affect the structure, administration, or the type of benefits provided by an ERISA plan, the mere fact that the [law] has some economic impact on the plan does not require that the [law] be invalidated." *Id.* (quoting *Rebaldo v. Cuomo*, 749 F.2d 133, 139 (2d Cir.1984), *cert. denied*, 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985)).

In *Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529 (11th Cir.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 335, 133 L.Ed.2d 234 (1995), the Eleventh Circuit addressed preemption of state law claims.[3] In that case, the Eleventh Circuit held that a state law claim brought by a third-party health care provider, as opposed to a participant or beneficiary under a plan, too tenuously affects an ERISA plan to be preempted by the statute. *Id.* at 1533. In so holding, the Eleventh Circuit relied on *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir.1990) and *Hospice of Metro Denver v. Group Health Ins.*, 944 F.2d 752 (10th ·Cir.1991).

In *Memorial Hospital*, 904 F.2d 236, a health care provider brought an action against the group health insurer alleging state law claims for breach of contract and for deceptive and unfair trade practices under Article 21.21. of the Texas Insurance Code ("the 21.21 claim"). Although the court held that the breach of contract claim was preempted by ERISA, it found that the 21.21 claim was not. The *Memorial Hospital* court reached its conclusion after determining the plaintiff's capacity for bringing its claims; *i.e.*, the *Memorial Hospital* court looked to see whether the plaintiff was bringing suit as a beneficiary under the ERISA plan or as a third-party.[4] For the breach of contract claim, the *Memorial Hospital* court noted that the plaintiff sued as a beneficiary, through the assignment of benefits, and the claim therefore related to the ERISA plan. However, for the 21.21 claim, the *Memorial Hospital* court noted that the plaintiff sued, not in its derivative capacity as a beneficiary, but in its independent status as a third-party health care provider. For the 21.21 claim, the *Memorial Hospital* court concluded that a state law claim's relation to ERISA was too remote to warrant ERISA preemption.

In *Hospice of Metro Denver*, the Tenth Circuit held that "a state law claim which does not affect the 'relations among the principal ERISA entities, the employer, the plan, the plan fiduciaries, and the beneficiaries' as such, is not preempted by ERISA." 944 F.2d at 756 (quoting *Memorial Hosp.*, 904 F.2d at 249; *Perkins v. Time Ins. Co.*, 898 F.2d 470, 473 (5th Cir.1990)). The court further noted that "[a]n action brought by a health care provider to recover promised payment from an insurance carrier is distinct from an action brought by a plan participants against the insurer seeking recover of benefits under the terms of the insurance plan. Preemption in this case would stretch the 'connected with or related to' standard too far." *Id.*

Thus, the critical question in the Variety case *sub judice* is whether Variety brings its promissory estoppel claim as a beneficiary under the plan or as a third-party health care

---

3. The Court notes that the *Lordmann* court addressed the issue of preemption when discussing the plaintiff's negligent misrepresentation claim. Although the *Lordmann* court discusses equitable estoppel, this discussion is not relevant to the instant discussion insofar as the equitable estoppel claim was brought under federal, not state, common law.

4. In determining whether ERISA preempted a particular state law claim, the *Memorial Hospital* court looked to see whether: "(1) the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA; and (2) the claims directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries."

*Id.* at 245.

provider. Noting that Count II of Variety's amended complaint, similar to the *Memorial Hospital* plaintiff's complaint, contains no mention that Variety is bringing this claim as an assignee of benefits, the Court finds that Variety seeks to invoke the doctrine of promissory estoppel in its independent status as a third-party health care provider. Accordingly, the Court finds that Count II of Variety's amended complaint does not relate to an ERISA plan and, accordingly, is not preempted.[5]

## III. Yoder's First Amended Complaint

### A. Count I: "Breach of Insurance Contract"

■ Count I of Yoder's amended complaint is labeled "breach of insurance contract" and is brought against Lil' Champ and BC/BS. Lil' Champ asserts two bases for dismissal: failure to exhaust administrative remedies and preemption. BC/BS moves to dismiss on the preemption doctrine. The Court first turns to Lil' Champ's argument that Count I should be dismissed for failure to exhaust administrative remedies.

The law in the Eleventh Circuit is that plaintiffs in ERISA cases must normally exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court. *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 160 (11th Cir.1992); *Springer v. Wal–Mart Associates' Group Health Plan*, 908 F.2d 897, 899 (11th Cir.1990); *Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1224–27 (11th Cir.1985), *cert. denied*, 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986). The exhaustion requirement applies to breach of contract claims and to actions premised on alleged statutory violations. *Springer*, 908 F.2d at 899 (citations omitted). However, there are recognized ex-

ceptions to the exhaustion requirement; for example, it has been held that exhaustion is not required if it would be futile or if the remedy would be inadequate. *Id.* (citations omitted). The decision whether an exception should be applied to the exhaustion requirement is committed to the sound discretion of the district court and will not be overturned absent abuse of discretion. *Id.* (citation omitted).

Yoder argues that she exhausted her administrative remedies, or, in the event that she is found not to have completely exhausted her remedies, that exhaustion would have been futile. Yoder claims that she has alleged these facts in her amended complaint. Specifically, Yoder points to paragraph 21 of her amended complaint which states, "At all times material hereto, the Plaintiff performed all obligations imposed on her by the contract of insurance in effect or, in the alternative, such conditions have been waived or excused."

Although the court must construe Yoder's amended complaint in the most favorable light and must accept all factual allegations as true, Paragraph 21 of Yoder's claim does not sufficiently satisfy the requirements for pleading exhaustion under ERISA. *See Variety Children's Hospital v. Century Medical Health Plan, Inc.*, 57 F.3d at 1042 n. 2 (11th Cir.1995) (allegations that a plaintiff has complied with "all conditions precedent" or that "such conditions have been waived or excused" does not fulfill the exhaustion requirement). However, the Court, mindful that Yoder argues in her memorandum of law that she did exhaust administrative remedies, dismisses Count I without prejudice and grants Yoder leave to file an amended complaint to properly plead exhaustion. The Court also continues its consideration of the

5. In *Variety Children's Hospital, Inc. v. Century Medical Health Plan, Inc.*, No. 93–718–CIV–MOORE, the undersigned granted defendant's motion to dismiss Variety's promissory estoppel claim on the basis that the claim was preempted by ERISA. On appeal, the Eleventh Circuit affirmed the Court's order on the basis that Variety's promissory estoppel was not based on an alleged promise to pay since the defendant had retracted its promise to pay prior to Variety's commencement of treatment. *Variety Children's Hospital, Inc. v. Century Medical Health Plan, Inc.*, 57 F.3d 1040, 1043 (11th Cir.1995). The Eleventh Circuit noted that Variety's claim really questioned whether the treatment was covered under the plan and thus challenged plan benefits. *Id.* For this reason, the Eleventh Circuit found that Variety's promissory estoppel claim related to an ERISA plan and therefore was preempted. *Id.* The facts of the present Variety case are distinguishable from the earlier Variety case in that there is no retraction of defendant's promise

substantive merits of Count I of Yoder's amended complaint.

Lil' Champ and BC/BS argue that Count I of Yoder's amended complaint should be dismissed since it alleges a state law breach of contract claim and is preempted by ERISA. For the reasons set forth above with respect to Variety, the Court finds that Yoder states a claim for relief under § 502(a)(1)(B) of ERISA. The Court notes that Yoder originally filed her complaint in state court and did indeed allege a state law breach of contract claim. When Yoder's action was removed to this Court, Yoder conceded that her state law claims were preempted by ERISA and moved to amend her complaint. The Court finds that, in filing an amended complaint, Yoder abandoned her state law breach of contract claim and asserted a claim pursuant to Section 502(a)(1)(B) of ERISA.

**B. Count II: Breach of Contract**

Count II is a breach of contract claim against CobraServ. Insofar as CobraServ argues that Count II is preempted by ERISA, the Court denies CobraServ's motion to dismiss Count II for the reasons set forth above.

■ The Court, however, addresses an argument raised by CobraServ that has not been raised by the other defendants.[6] CobraServ argues that Yoder cannot bring an ERISA claim against a third-party administrator, i.e., a non-fiduciary. In support of this argument, CobraServ relies on *Baker v. Big Star Division of the Grand Union Co.*, 893 F.2d 288, 289 (11th Cir.1989) and *Howard v. Parisian, Inc.*, 807 F.2d 1560 (11th Cir.1987). Although these courts held that a "plan administrator who merely performs claims processing, investigatory, and record keeping duties is not a fiduciary" and, therefore, not a proper defendant in an ERISA case, *see, e.g., Howard*, 807 F.2d at 1564, this is not the situation in this case. In Yoder's amended complaint, she specifically alleges that CobraServ had discretionary authority or control over the management of the Plan.

to pay and Variety's estoppel claim does not seek to recover under the plan.

**6.** CobraServ raised this argument in its reply memorandum to Yoder's response to CobraServ's motion to dismiss.

*See* Yoder's Amended Complaint ("Yoder's Am.Cmplt."), ¶ 42 ("Defendant, CobraServ, Inc., as the contracted party responsible for making payments of benefits to its insured and/or determining eligibility for benefits, has not paid and refuses to pay the Plaintiff benefits due under the contract of insurance for all covered medical and hospital related services and treatment"). Accordingly, Count II cannot be dismissed at this juncture.

**C. Count III: Promissory Estoppel**

■ In Count III of Yoder's complaint, she seeks to estop BC/BS and CobraServ from denying coverage. Yoder's estoppel claim is brought under federal common law. The Eleventh Circuit has noted that ERISA, although "a comprehensive statute designed to federalize the regulation of employee welfare benefit plans," contains interstices which the federal courts are expected to fill in with a "federal common law of rights and regulations under ERISA-regulated plans." *Glass v. United Omaha of Life Ins. Co.*, 33 F.3d 1341, 1347 (11th Cir.1994) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987)). In filling in these gaps, the Eleventh Circuit "[has] created a narrow common law doctrine under ERISA for equitable estoppel when (1) the provisions of the plan at issue are ambiguous, and (2) representations are made which constitute an oral interpretation of the ambiguity."[7] *Id.* (citing *Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1285–86 (11th Cir.1990), *cert. denied*, 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990)). Accordingly, equitable estoppel is not available for unambiguous written plans or oral modifications of the plan. *Id.* (citing *Alday v. Container Corp.*, 906 F.2d 660, 666 (11th Cir.1990), *cert. denied*, 498 U.S. 1026, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991); *Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir.1986)); *see also Lordmann*, 32 F.3d at 1534–35.

**7.** Yoder's amended complaint labels Count III as a "promissory estoppel" not "equitable estoppel" claim. However, it is evident that Yoder is attempting to allege an equitable estoppel claim.

With respect to Yoder's equitable estoppel claim, the relevant provision in the Plan provides:

*Newborn Children*

—Employee Only Coverage

If you have Employee only coverage, you must apply for Employee/family coverage in order to insure a newborn child(ren). You must apply *before* the birth of the baby. If you do not change your coverage prior to the birth, the newborn child(ren) will not be covered.

Further, the Plan requires the following procedure for obtaining coverage:

*Applying for Coverage*

An eligible employee may apply for coverage by completing an Employee Enrollment Application form ... The Administration must process and accept these applications before the employee's coverage may take effect.

Yoder alleges that she perceived an ambiguity in the Plan regarding newborn and dependent coverage. Yoder Am.Cmplt., ¶ 52. As a result of the perceived ambiguity, Yoder alleges that she telephoned CobraServ to confirm coverage, and CobraServ allegedly informed her that the Plan would cover Yoder's newborn child and that Yoder should telephone CobraServ again after the birth of the baby. Yoder Am.Cmplt. ¶ 52. Yoder alleges that she relied on CobraServ's representations. Yoder Am.Cmplt. ¶ 54.

The interpretation of an insurance contract, including the determination and resolution of ambiguities, is a question of law for the court to decide. *Dahl–Eimers v. Mutual of Omaha Life Ins. Co.,* 986 F.2d 1379, 1381 (11th Cir.1993) (citing *Gulf Tampa Drydock Co. v. Great Atl. Ins. Co.,* 757 F.2d 1172, 1174 (11th Cir.1985)). In determining whether an ambiguity exists, courts must look at the entirety of an insurance contract and interpret its terms. *Id.* at 1381–1382. Ambiguity exists if a term is susceptible to two or more reasonable interpretations that can be fairly made. *Id.* at 1381 (citations omitted). Ambiguity is not necessarily present because a contract requires interpretation or the parties have failed to define a term. *Id.* at 1382.

In the Yoder case *sub judice,* the Court finds that the Plan is unambiguous. It is unambiguous in that it requires an employee to apply before, not after, the birth of a baby in order to convert the plan from employee only to employee/family coverage. Furthermore, it is clear that the Plan requires an application for coverage be made in writing. In her amended complaint, Yoder does not allege that she applied for such coverage or followed the procedures set forth in the Plan. Accordingly, Yoder has failed to establish an equitable estoppel claim, and Count III must be dismissed.

**D. Count IV: Waiver**

 Count IV of Yoder's complaint against BC/BS and CobraServ rests on a waiver principle. Waiver is "the voluntary, intentional relinquishment of a known right." *Glass,* 33 F.3d at 1347 (citing *Pitts,* 931 F.2d at 355; Appleman, Insurance Law and Practice, § 9251, at 488–89 (1981)). Unlike an estoppel claim, waiver does not necessarily require reliance. *Id.* Since waiver generally is a state law claim, it is preempted by ERISA unless waiver is recognized under the rubric of federal common law.

The Eleventh Circuit recently addressed the question of whether waiver is cognizable under ERISA in *Glass.* However, the Eleventh Circuit, noting that the waiver issue was one of first impression in the circuit and recognizing a split among the few circuits that have addressed this issue, elected to keep the waiver issue unresolved in this circuit. *Id.* at 1348 ("we leave open whether in other circumstances waiver principles might apply under the federal common law in the ERISA context").

Although the Eleventh Circuit in *Glass* did not decide whether a waiver claim under federal common law could be asserted, it noted that the elements necessary to invoke the waiver doctrine were not present in the case before it. In that case, the plaintiff's waiver claim was premised on the defendant's acceptance of premiums under the plan at issue. When the defendant realized several months later that it had wrongfully accepted the premiums, the defendant returned the premiums. Relying on these

facts, the *Glass* court determined that there was insufficient evidence either of an intentional relinquishment of a known right or of any unjust benefit circumstances sufficient to support a waiver claim. 33 F.3d at 1348.

In the Yoder case *sub judice,* Yoder's waiver argument similarly is premised on the fact that she tendered monthly premiums to BC/BS and CobraServ and that these defendants accepted the premiums. Yoder also alleges that BC/BS and CobraServ canceled the policy several months after Todd's birth and refunded the premiums it had previously collected. Based on these facts, the Court finds that Yoder has not demonstrated that the defendants intentionally relinquished their rights or were unjustly enriched. Accordingly, as the *Glass* court concluded, "a something for nothing" waiver claim cannot stand. *Id.* at 1348.

### E. Fl.Stat. § 627.6575

Yoder concedes that her claim under Fl. Stat. § 627.6575 is preempted by ERISA. Accordingly, Count V is dismissed against all the defendants.

### *CONCLUSION*

Accordingly, in light of the foregoing, it is ORDERED AND ADJUDGED as follows:

1. Defendant Lil' Champ's motion to dismiss amended complaint (Case No. 95–500; DE # 18) is hereby DENIED.

2. Defendant Blue Cross and Blue Shield of Florida's motion to dismiss amended complaint (Case No. 95–500; DE # 22) is hereby DENIED.

3. Defendant CobraServ's motion to dismiss amended complaint (Case No. 95–500, DE # 38; Case No. 95–843, DE # 48) is hereby GRANTED IN PART AND DENIED IN PART.

4. Defendant Blue Cross and Blue Shield of Florida's motion to dismiss amended complaint (Case No. 95–500, DE # 39; Case No. 95–843, DE # 49) is hereby GRANTED IN PART AND DENIED IN PART.

5. Defendant Lil' Champ's motion to dismiss amended complaint (Case No. 95–500, DE # 61; Case No. 95–843, DE # 46) is

hereby GRANTED IN PART AND DENIED IN PART.

6. Plaintiff Variety Children's request for hearing (Case No. 95–500, DE # 26) is hereby DENIED AS MOOT.

7. Count I of Plaintiff Lynda Yoder's amended complaint is DISMISSED WITHOUT PREJUDICE. Plaintiff Lynda Yoder is directed to file an amended complaint, in accordance with the above, within ten (10) days of this Order.

8. Counts III, IV, V of Plaintiff Lynda Yoder's amended complaint are DISMISSED WITH PREJUDICE.