**Tracy L. ALBRIGHT, Plaintiff,**

v.

**UNION BANKERS INSURANCE COMPANY, Defendant.**

No. 98–2236–CIV.

United States District Court, S.D. Florida.

July 17, 2000.

---

Steve Simon, Miami, FL, for plaintiff.

Keith Diamond, Miami, FL, John Bello, Jr., Tampa, Florida, for defendant.

## *ORDER*

MOORE, District Judge.

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment on its Counterclaim for Declaratory Relief (DE # 89), Plaintiff's Motion for Summary Judgment (DE # 101), Defendant's Motion to Strike Portions of the Affidavit of Plaintiff Filed in Support of Plaintiff's Motion for Summary Judgment (DE # 104), and Defendant's Motion for Involuntary. Dismissal of Plaintiff's Equitable Estoppel Claim (DE # 118).

UPON CONSIDERATION of the Motions, responses, and the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

## BACKGROUND

Plaintiff Tracy L. Albright ("Plaintiff") originally filed the instant case in July 1998 as a state court action for injunctive and declaratory relief, as well as for damages, arising from Defendant Union Bankers Insurance Company's ("Defendant") failure to pay for medical care and expenses needed to treat Plaintiff's AIDS condition under the terms of Plaintiff's insurance policy. The case was removed to federal court in September 1998.

By Order dated July 19, 2000, the Court ruled that the insurance policy at issue was part of an Employee Welfare Benefit Plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). By Order dated December 3, 1999, the Court denied Defendant's Motion to Dismiss Count II of Plaintiff's Second Amended Complaint for equitable estoppel under ERISA.

Now before the Court are the parties' respective motions for summary judgment. At issue is the extent of coverage offered

by the insurance policy. Plaintiff asserts that all of her home healthcare treatment, including certain medications, are covered by the insurance policy at 80% of the amount that she is paying for the treatment, while Defendant claims that the medications are covered only at 80% of the amount that would have been charged were the medications administered in the hospital.

On October 26, 1993, Defendant issued to Plaintiff a Limited Benefit Basic Hospital Medical Surgical Expense Policy. (Second Amended Complaint, Ex. A [the "Policy"]; Pretrial Stipulation at V.A). In March 1994, Plaintiff was hospitalized and diagnosed with AIDS. (Second Amended Complaint ¶ 12; Pretrial Stipulation at V.C). After her hospitalization, Plaintiff's doctor established a home healthcare plan as defined in the Policy. (*Id.* at V.D). Under the home health care plan, Plaintiff received treatment including prescription drugs, home health care nursing to administer a prescription drug immunoglobin ("IVIG"), and physical and massage therapy. (*Id.* at V.F–G). Thereafter, Defendant paid for Plaintiff's treatment rendered under her home health care plan until September 30, 1997. (Second Amended Complaint ¶ 12). The pertinent portion of the Policy is as follows:

5. *Home Health Care* —Benefits are payable at 80% for the following expenses incurred under a Home Health Care Plan:

a. a maximum of 40 visits per Calendar Year by:

1) Home Health Aides for part-time or intermittent personal health care of a medical or therapeutic nature;

2) legally qualified physical, occupational, speech or inhalation therapists; or

3) licensed nurses for part-time or intermittent nursing care.

Each visit described above counts as one Home Health Care visit. Each four hours of service by a Home Health Aide counts as one Home Health Care visit; and

b. other medical supplies provided by the Home Health Care Agency *to the extent such charges would have been covered under this Policy if the Family Member had remained Hospital confined.*

(Policy at 8) (emphasis added).

## DISCUSSION

### I. Summary Judgment Standard

The standard to be applied in reviewing a summary judgment motion is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. *See Twiss v. Kury*, 25 F.3d 1551, 1554 (11th Cir.1994). The moving party has the burden of meeting this exacting standard. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Id.*

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *See id.* However, the non-moving party:

may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts

showing that there is a genuine issue for trial.

Rule 56(e), Fed.R.Civ.P. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. *Anderson*, 477 U.S. at 254, 106 S.Ct. 2505. If the non-movant fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted. *See id.* at 254–55, 106 S.Ct. 2505.

Additionally, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *See id.*

## II. Ambiguity in Policy

The interpretation of an insurance contract, including the determination and resolution of ambiguities, is a question of law for the court to decide. *Dahl–Eimers v. Mutual of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381 (11th Cir.1993). In its motion for summary judgment, Defendant concedes that Plaintiff is entitled to 80% payment for expenses incurred for home nursing care, physical therapy, occupational, speech and inhalation therapists and home health aides under Subparagraph 5a of the Home Health Care section of the Policy.[1] (Defendant's Motion for Summary Judgment at 2, ¶ 7).

The parties, however, disagree as to the extent of coverage for Plaintiff's medications. Plaintiff asserts that the medications are covered under Section 5b as "other medical supplies," because her medications would be covered if she had remained in the hospital. Plaintiff contends that the language "to the extent such charges would have been covered if the family member had remained hospital confined" has nothing to do with setting a maximum dollar amount on benefits, but merely defines what types of items qualify as "other medical supplies." (Plaintiff's Motion for Summary Judgment at 17). As such, Plaintiff contends that benefits are payable at 80% of expenses incurred for such medications.

Defendant agrees that medications could be included within the scope of "other medical supplies" under Section 5b. However, Defendant contends that the language "to the extent such charges would have been covered if the family member had remained hospital confined" limits coverage to a maximum dollar amount. Specifically, Defendant asserts that Section 5b must be read in conjunction with the "Inpatient Hospital Care" section of the Policy to determine "the extent such charges" are covered. Such provision provides, in pertinent part:

... services intimately related to a patient's health care, specifically ordered by a Doctor." (Policy at 4). Defendant has not disputed Plaintiff's assertion that her doctor ordered massage therapy as part of her treatment.

1. Defendant contends that massage therapy is not covered under this provision of the Policy. The Court disagrees. The Policy provides coverage for "Home Health Aides," which are defined as "health worker[s] who perform[ ]

IN–PATIENT HOSPITAL CARE

\* \* \* \* \* \*

3. *In-patient Miscellaneous Charges:* Benefits are payable up to 2 times the selected daily room and board benefit for three days and one times the daily room and board benefit for the remaining days up to the 100 day limit.

(Policy at 7). Accordingly, Defendant contends, even if "other medical supplies" includes medications provided under Plaintiff's home health care plan, coverage is limited to a maximum benefit payment of $16,480.[2] (Opposition to Plaintiff's Motion for Summary Judgment at 6–7).

■ If the terms of an insurance contract are clear and unambiguous, the court must interpret the contract in accordance with its plain meaning. *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996). However, an insurance contract is ambiguous if it is susceptible to two or more reasonable interpretations that can fairly be made. *Dahl–Eimers*, 986 F.2d at 1381; *Variety Children's Hospital, Inc. v. Blue Cross/Blue Shield of Florida*, 942 F.Supp. 562, 570 (S.D.Fla.1996). The Court finds that the Policy is ambiguous, as both Plaintiff and Defendant have asserted reasonable interpretations of the relevant language.

■ Plaintiff contends that, given such ambiguity, Defendant should be estopped from now taking its position of limited coverage after paying benefits for her home health care, including medications, without such limitation for several years. The Eleventh Circuit has created a narrow common law doctrine under ERISA for equitable estoppel when the provisions of the plan at issue. *See Variety Children's Hospital, Inc. v. Blue Cross/Blue Shield of Florida*, 942 F.Supp. 562, 570 (S.D.Fla. 1996) (*citing Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1285–86 (11th Cir.1990)). *Cf. Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir.1986) (holding that federal common law doctrine of equitable estoppel is not available in cases involving *amendments* to or *modifications* of *unambiguous* employee plans governed by ERISA). In this case, application of equitable estoppel is appropriate, as Defendant's payment of benefits over several years for Plaintiff's home health care, without asserting a maximum dollar amount for medication benefits, constitutes its interpretation of the ambiguous Policy language.[3]

■ Defendant contends that Plaintiff has not established a prima facie case of equitable estoppel. (Reply to Defendant's Motion for Summary Judgment at 9). Specifically, Defendant claims that Plaintiff has failed to show that she detrimentally relied on Defendant's interpretation of the Policy coverage. The elements of equitable estoppel, as defined by federal common law, are: (1) the party to be estopped misrepresented material facts;

2. Defendant arrives at this figure as follows: 80% of 2 times the selected daily room and board benefit (2 × $200 = $400) for three days (3 × $400 = $1,200) and one times the daily room and board benefit for the remaining days up to the 100 days limit (97 days @ $200 per day = $19,400), totaling $16, 480 ($1,200 + $19,400 = $20,600 × 80% = $16,480). (Defendant's Motion for Summary Judgment at 10–11).

3. In Defendant's Motion for Involuntary Dismissal of Plaintiff's Equitable Estoppel Claim, Defendant contends that "regardless of how the Court rules on whether an ambiguity exists in the [Policy]," Plaintiff's equitable estoppel claim should be dismissed because it "would result in an extension or enlargement of the benefits available under the plan." (Defendant's Motion for Involuntary Dismissal of Plaintiff's Equitable Estoppel Claim at 1– 2). However, as noted in *National Companies Health Benefit Plan v. St. Joseph's Hosp., Inc.*, 929 F.2d 1558, 1572, n. 13 (11th Cir.1991), *abrogated on other grounds, Geissal v. Moore Med. Corp.*, 524 U.S. 74, 118 S.Ct. 1869, 141 L.Ed.2d 64 (1998), the application of equitable estoppel to the facts of this case will not result in an extension or enlargement of the benefits available under the Policy. Rather, as previously noted, Defendant's representations amounted to an interpretation of an ambiguous provision of the Policy, not an extension of coverage beyond that specified in the Policy. *Id.* This motion is denied.

(2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should have known, the true facts; and (5) the party asserting the estoppel detrimentally relied on the misrepresentation. *See National,* 929 F.2d at 1572. The Court concludes that these elements have been met.

First, as previously discussed, Defendant misrepresented its current position that benefits payable under the Policy for medications are limited to a maximum dollar amount by paying benefits over several years without claiming such limitation. Additionally, Plaintiff has presented evidence that Defendant's employees interpreted the Policy as providing coverage at 80% of all expenses incurred pursuant to Plaintiff's home health care plan. (*See* Plaintiff's Motion for Summary Judgment at 6–8).

Second, as drafter of the Policy, Defendant is charged with constructive knowledge of the Policy's coverage, thus satisfying the second element of the estoppel claim. *See National,* 929 F.2d at 1573, n. 15. Furthermore, Defendant had reason to believe that Plaintiff would rely on continuing coverage after making such benefits payments for several years. The fourth element of equitable estoppel is also clearly met. Defendant does not contend that Plaintiff actually knew of the coverage limitation.

Finally, Plaintiff detrimentally relied on Defendant's interpretation of the Policy. Plaintiff reasonably believed, after several years of receiving benefits from Defendant for her home health care, that coverage would continue. (Albright Affidavit ¶ 9, attached as Exhibit 17 to Plaintiff's Motion for Summary Judgment).[4] During the pe-

riod of time that Defendant made such payments, Plaintiff did not attempt to obtain other means of paying for her home health care. (*Id.* at ¶ 10). When Defendant stopped paying for Plaintiff's home health care, Plaintiff was left without coverage and unable to obtain other insurance. (*Id.* at ¶ 11). The medical care and treatment was necessary for Plaintiff's AIDS condition. (Fisher Affidavit ¶ 3, attached as Exhibit 13 to Plaintiff's Motion for Summary Judgment). Without Defendant's payments, Plaintiff went for a period of time without any medication or treatment, and her medical condition substantially worsened. (*Id.*).

In summary, the Court finds that benefits are payable under the Policy at 80% for all expenses incurred under Plaintiff's home health care plan, including medications, nursing care, and physical and massage therapy.

## CONCLUSION

Based on the foregoing, it is ORDERED AND ADJUDGED as follows:

(1) Defendant's Motion for Summary Judgment on its Counterclaim for Declaratory Relief is hereby DENIED;

(2) Plaintiff's Motion for Summary Judgment is hereby GRANTED in part. Plaintiff shall file a Motion for Summary Judgment on the issue of damages within twenty (20) days from the date of this Order, demonstrating her entitlement to "compensatory damages, benefit due under the terms of her policy of insurance, [and] interest on said benefits" as sought in the Second Amended Complaint. Plaintiff's request for attorneys' fees in her Motion for Summary Judgment is DENIED with leave to refile in accordance with Local Rule 7.3;

---

4. Defendant has filed a "Motion to Strike Portions of the Affidavit of Plaintiff Filed in Support of Plaintiff's Motion for Summary Judgment." The Court rejects Defendant's assertion that Plaintiff's affidavit directly contradicts her prior deposition testimony and contains speculation, conjecture, and conclusions. As such, Defendant's motion to strike is denied.

(3) Defendant's Motion to Strike Portions of the Affidavit of Plaintiff Filed in Support of Plaintiff's Motion for Summary Judgment is hereby DENIED;

(4) Defendant's Motion for Involuntary Dismissal of Plaintiff's Equitable Estoppel Claim is hereby DENIED.