Richard C. GLASS, Executor of the Estate of execr Maxwell C. Hostetter, Jr., Plaintiff,

Margaret Hostetter, Plaintiff–Appellant,

v.

UNITED OF OMAHA LIFE INSURANCE COMPANY, Defendant–Appellee.

No. 93–8775.

United States Court of Appeals, Eleventh Circuit.

Oct. 4, 1994.

---

**16.** 976 F.2d at 689.

Norman Lee Smith, F. Clay Bush, Goodman & Bush, Atlanta, GA, for appellant.

Elizabeth J. Bondurant, Ben Kingree, Carter & Ansley, Atlanta, GA, for appellee.

Before ANDERSON and BIRCH, Circuit Judges, and ATKINS *, Senior District Judge.

ANDERSON, Circuit Judge:

Plaintiff Hostetter appeals an order granting summary judgment to defendant, United of Omaha Life Insurance Company ("United"), on state and federal claims arising from the denial of life insurance benefits for which she was the sole beneficiary. The district court held that the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, preempted all claims on both policies, and ruled that no remediable violation of ERISA occurred. For the following reasons, we affirm.

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting

## I. FACTS AND PROCEEDINGS BELOW

Maxwell C. Hostetter was an employee with Silk Greenhouse, Inc. from July 13, 1987, until June 22, 1990. In 1988, Hostetter discovered that he was infected with Human Immunodeficiency Virus; he became ill as a result in January 1990. Unable to work, he went on leave of absence that month. Silk Greenhouse continued to pay him his full salary until they terminated him in June of that year. Hostetter died of Acquired Immune Deficiency Syndrome on February 2, 1991.

Silk Greenhouse offered its employees group life and health insurance. Through April 1, 1990, Silk Greenhouse offered an insurance program with Guardian Insurance Company. In December 1989 or January 1990, Silk Greenhouse began negotiating with United to replace Guardian as its insurance carrier. At some point, United offered a proposed program to Silk Greenhouse, and after negotiations the parties contracted to create a group insurance program.

Under this program the standard insurance policy for employees provided "Basic" coverage—life insurance equal to the employee's annual salary, health, dental, and accidental death and dismemberment insurance. This insurance program's premiums were paid jointly by the employee and Silk Greenhouse, with Silk Greenhouse contributing 55%. The insurance program through United offered an "Elect" life insurance policy for up to $100,000, with the premiums to be paid for solely by the employee. Only employees who participated in the Basic program were eligible for Elect life insurance. The Elect life policy contained a "portability" feature that allowed the policy to be converted into an individual policy when the employee left Silk Greenhouse.

Hostetter enrolled in the Basic life program on March 28, 1990, and the Elect Life program on March 31, 1990, naming his mother as the beneficiary of both policies. Both policies went into effect on April 1, 1990. This appeal concerns only the life

by designation.

coverage. After Mr. Hostetter was terminated in June 1990, he elected to convert the Elect life policy to an individual policy pursuant to the portability feature.

United enrolled Hostetter in the insurance program, initially accepted premiums, and converted his Elect life policy upon his request. However, the record clearly shows that Mr. Hostetter was ineligible for either coverage from the inception of the program until his death. The original group insurance proposal that United submitted to Silk Greenhouse stated a proposed eligibility requirement for Basic life insurance: those eligible for coverage would have to be working 20 hours per week for Silk Greenhouse at the time the plan went into effect. At Silk Greenhouse's request, the hourly requirement was raised to 30 hours per week, and was reflected in the booklet that was eventually given to those that enrolled in the plan. Hostetter never received this booklet, but it is clear that he was ineligible for the United plan because he went on leave of absence in January 1990, well before the plan went into effect, and never returned to work.

Silk Greenhouse was responsible for providing United with a list of employees eligible for the group program. Silk Greenhouse considered the employees on leave of absence to be full time employees eligible for the United program. Consequently, Silk Greenhouse submitted Mr. Hostetter's name as an eligible employee. United later discovered that employees who were on leave at the inception of the plan had been enrolled. The record shows that United almost immediately began contesting the eligibility of the employees enrolled in the plan who had been on leave of absence from its inception. As early as November 1990, United had called the eligibility of Hostetter and others in his situation into question.

Mr. Hostetter submitted approximately $118,000 in claims under the health insurance coverage provided by the plan. The record shows that all of these claims were paid by either Silk Greenhouse or United. Under the plan, Silk Greenhouse made the payments for health claims up to $100,000. A stop-loss insurance policy that Silk Greenhouse purchased from United made United responsible for payments over $100,000. The record reflects that United had raised the issue of Hostetter's eligibility as early as November 1990, and had informed Silk Greenhouse by January of 1991 that it considered Hostetter ineligible for the plan. After Mr. Hostetter's death, United denied claims made on both the life portion of his Basic coverage and the Elect life insurance policy.

As the sole beneficiary of Mr. Hostetter's insurance policies, Mrs. Hostetter brought suit in the Northern District of Georgia, based on diversity.[1] She filed claims for breach of contract and bad faith. Later, she filed an amended complaint claiming ERISA violations. Under ERISA, plaintiff claimed that United breached its fiduciary duty to Hostetter, failed to provide accurate and timely plan information in the summary plan description, and wrongfully denied benefits. Furthermore, the plaintiff argued that waiver and/or equitable estoppel prohibited the defendant from denying benefits. The parties filed cross motions for summary judgment, with the defendant claiming that ERISA preempted all claims and that no compensable violation had occurred. The plaintiff admitted that ERISA governed the Basic life policy, but argued that ERISA did not govern the Elect life policy. The district court held that ERISA preempted all state law claims and entered summary judgment in favor of the defendant on all ERISA claims. The district court held that any summary plan description errors were the responsibility of Silk Greenhouse, which was the plan administrator. The district court also found that no breach of fiduciary duty had occurred and that the life insurance proceeds were not wrongfully denied, because Hostetter was never eligible for the plan. Finally, the district court found that no equitable estoppel claim existed. For the following reasons, we affirm.

## II. STANDARD OF REVIEW

▉ We have plenary review of summary judgments, and we apply the same legal standards that controlled the district court. *Miranda v. B & B Cash Grocery Store*, 975 F.2d 1518, 1532 (11th Cir.1992).

---

1. Richard Glass initiated the action as executor of Maxwell Hostetter's estate, and Margaret Hostetter was subsequently substituted as the real party in interest, and we refer to her as the plaintiff in this opinion.

We review the facts in the light most favorable to the non-movant and resolve all factual disputes in favor of the non-movant.

## III. DISCUSSION

■ Several of appellant's claims warrant little discussion. First, it is clear that Hostetter was not working 30 hours per week at any time after the plan became effective and thus was not eligible for the plan. Thus, there was no wrongful denial of eligibility under ERISA. Furthermore, any violations of ERISA regarding the information provided in the summary plan description ("SPD") or the timeliness of the SPD's distribution afford Hostetter no relief, because Hostetter has not shown evidence that any deficiencies misled him regarding coverage, or caused any damages. Finally, Hostetter's equitable estoppel argument fails because Hostetter adduced no evidence that he detrimentally relied on any misrepresentations regarding his eligibility. Only two claims merit extended discussion. First, we consider Hostetter's argument that ERISA does not govern the Elect life policy, and second we entertain her waiver argument.

### A. *ERISA governs the Elect Life Policy*

■ In order to have an ERISA plan there must be (1) a plan fund or program (2) established or maintained (3) by an employer or by an employee organization (4) for the purpose of providing, among other things, medical or death benefits (5) to participants and their beneficiaries. *Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir.1982).

Although Hostetter concedes that the Basic life policy is governed by ERISA, she argues that the Elect life coverage is not governed by ERISA.[2] She maintains that this supplemental coverage is not part of an ERISA plan because Hostetter paid the entire premium and the policy was convertible into an individual policy. Hostetter cites Department of Labor Regulation 29 C.F.R. § 2510.3–1(j) to support her argument.

■ Regulation 29 C.F.R. § 2510.3–1(j) is a "safe harbor" provision that excludes some programs for group insurance from the "employee welfare benefit plans" governed by ERISA.[3] In relying upon this regulation, Hostetter invites us to sever the Elect life policy from the rest of the benefits package the Silk Greenhouse employees received from the Plan. We have recently held that a dependant coverage feature could not be severed from a plan and excluded from ERISA under Regulation 2510.3–1(j). *Smith v. Jefferson Pilot Life Ins. Co.,* 14 F.3d 562, 568 (11th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 57, — L.Ed.2d — (1994). Similarly, the Elect life policy in the instant case may not be severed from the plan in order to defeat ERISA coverage. *See id.* at 567. Elect life coverage was provided at discount rates only to participants of the Basic plan. The Elect life feature is part and parcel of the whole group insurance plan and thus ERISA governs it.

Plaintiff also argues that the Elect life policy is not governed by ERISA because it was converted into an individual policy, at

---

**2.** Congress enacted ERISA, 29 U.S.C. § 1001 *et seq.,* to protect "the interests of participants in employee benefit plans and their beneficiaries...." 29 U.S.C. § 1001. ERISA governs "employee benefit plans," *id.* at § 1003, and all "employee welfare benefit plans," such as group insurance programs, are also "employee benefit plans." *Id.* at § 1002(3).

**3.** Regulation 29 C.F.R. § 2510.3–1(j) states in full:

(j) *Certain group or group-type insurance programs.* For purposes of title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which

(1) No contributions are made by an employer or employee organization;

(2) Participation [in] the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

Hostetter's request, after Hostetter was terminated. Thus, the issue is whether ERISA follows the policy after it has been removed from the plan and established as an individual policy, or put another way, whether a policy that is initially governed by ERISA can undergo a transformation such that it is no longer part of an ERISA plan.[4] This is an issue of first impression in this circuit, and there is little case law in other jurisdictions.

The Ninth Circuit has held that ERISA governs policies converted pursuant to the mandatory conversion provisions of the Consolidated Omnibus Budget Reconciliation Act ("COBRA") that amended ERISA, 29 U.S.C. §§ 1161–62. *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 817 (9th Cir.1992); *Tingey v. Pixley–Richards West, Inc.*, 953 F.2d 1124, 1132–33 (9th Cir.1992). However, those cases relied to some extent on the fact that COBRA (*i.e.*, ERISA) provided a conversion right for those policies. COBRA requires plans to provide conversion rights to plan participants for health insurance benefits. 29 U.S.C. §§ 1161–62. This case, however, does not concern COBRA-mandated health benefits; it concerns a life insurance conversion feature that Silk Greenhouse obtained through negotiation. *Greany*, however, also based ERISA coverage on the fact that the plaintiffs in that case, like those in this case, would not have been eligible for the converted policy had they not enrolled in the ERISA plan. 973 F.2d at 817. Thus, *Greany* found ERISA coverage of the converted policy partly due to the integral relationship between the converted policy and the Plan.

All of the published cases in the federal district courts considering ERISA regulation of converted policies also involved policies converted pursuant to COBRA, although none of these cases assigned any substantial significance to the nature of the conversion. *See Mimbs v. Commercial Life Ins. Co.*, 818 F.Supp. 1556 (S.D.Ga.1993); *Klosterman v. Western General Management, Inc.*, No. 91 C 5015, 1993 WL 195273 (N.D.Ill. June 7, 1993); *Beal v. Jefferson–Pilot Life Ins. Co.*, 798 F.Supp. 673 (S.D.Ala.1992); *Nechero v. Provident Life & Accident Ins. Co.*, 795 F.Supp. 374 (D.N.M.1992).

All but one of the cases cited above held that ERISA governed the converted policy. For example, *Nechero* held that ERISA governed the converted policy in part because of the integral connection between the converted policy and the plan. 795 F.Supp. at 380. In *Mimbs*, however, the Southern District of Georgia held that although ERISA governed claims arising from the COBRA right to convert the policy, state law governed the claims arising from the converted policy itself. 818 F.Supp. at 1561. The *Mimbs* court relied in part on the fact that the conversion coverage in that case was for an individual as opposed to a class of beneficiaries. *Id.* Because the converted policy was an individual policy, the *Mimbs* court, noting its dispute with *Nechero*, found that there was no integral relationship between an individual converted policy and the plan from which the policy came. *Id.* at 1562.

The conversion in the instant case, unlike that in *Mimbs*, did not actually create an individual policy. It removed Hostetter's coverage from a group policy consisting of actively employed Silk Greenhouse employees and moved the coverage to a group policy of ex-Silk Greenhouse employees. Hostetter's insurance was part of a group policy whose beneficiaries all had one thing in common—they had enrolled as Silk Greenhouse employees in the original ERISA plan. Because the instant case is distinguishable from *Mimbs* in this respect, we need not decide

---

4. Although it is clear that Hostetter was not eligible for the coverage initially, we must consider the argument that conversion defeats ERISA governance because the result may determine whether plaintiff's waiver claims must be considered under state law with regard to any actions by United that were taken during or after conversion that might give rise to a waiver of eligibility requirements. In other words, if ERISA governs the policy after it was converted, then plaintiff's waiver claim must be adjudicated under ERISA. However, if the conversion ends ERISA's application to the policy, then any actions after the conversion that could possibly constitute a waiver of the eligibility requirements might have to be evaluated under state law. Because we determine that ERISA governs this converted policy, we need not address the state law of waiver.

whether conversion of a policy might defeat ERISA coverage in other circumstances. Clearly, Hostetter's ability to obtain the converted life insurance policy arose from the ERISA plan, and the converted policy itself continued to be integrally linked with the ERISA plan. In this case, conversion of the Elect life coverage did not defeat ERISA regulation.

## B. *Waiver*[5]

█ ERISA is a comprehensive statute designed to federalize the regulation of employee welfare benefit plans. However, the statute has interstices, and the Supreme Court has noted that Congress expected, in passing the statute, for the federal courts to fill those gaps with "a federal common law of rights and obligations under ERISA-regulated plans." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987). The developing federal common law of ERISA may look to state law for guidance, but must adhere to the congressional policy concerns that inform ERISA. *See Nachwalter v. Christie*, 805 F.2d 956, 959 (11th Cir.1986). Thus, not all common law insurance principles automatically apply to ERISA-regulated insurance policies.

█ In the Eleventh Circuit we have created a very narrow common law doctrine under ERISA for equitable estoppel when (1) the provisions of the plan at issue are ambiguous, and (2) representations are made which constitute an oral interpretation of the ambiguity. *See Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1285–86 (11th Cir.1990). However, estoppel is not available either for oral modifications (as opposed to interpretations) or when the written plan is unambiguous. *See Alday v. Container Corp.*, 906 F.2d 660, 666

(11th Cir.1990); *Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir.1986).

█ Waiver, however, is a distinct claim from equitable estoppel. Estoppel exists when the conduct of one party has induced the other party to take a position that would result in harm if the first party's acts were repudiated. *See Pitts by and Through Pitts v. American Security Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir.1991). We easily decided the estoppel claim in the instant case because there was obviously no detrimental reliance. Detrimental reliance is a necessary element of estoppel, but is not always a prerequisite for waiver, and the existence of a reliance element for waiver is very unclear. *Compare id.* (holding that waiver does not require reliance); *with Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 648 (7th Cir.1993) (discussing the point that the elements of waiver are not as well established as estoppel, and noting that some authority exists for the proposition that consideration or some level of detrimental reliance must be shown to prove waiver where estoppel elements are not also present) (*citing* 28 Am.Jur.2d Estoppel and Waiver § 30, § 159 (1966); 92 C.J.S. Waiver: Nature of Doctrine (1955)).

█ Because the element of reliance may not be necessary in waiver, we cannot dispose of the waiver claim as readily as we did the estoppel claim. Waiver is the voluntary, intentional relinquishment of a known right. *See Pitts*, 931 F.2d at 355; Appleman, Insurance Law and Practice § 9251 488–89 (1981). It is a common law principle whose applicability under ERISA is an issue of first impression in this circuit.

Only two circuit court opinions have addressed the issue of the applicability of waiver (as opposed to estoppel) under ERISA.

---

**5.** Plaintiff makes most of her waiver claims under state law, and incorporates federal waiver claims only by citing a single ERISA waiver case during her state law argument. ERISA waiver principles, if they emerge in this circuit, may be quite distinct from state waiver law, and parties should recognize this.

Furthermore, both parties in this case have interspersed arguments involving waiver into the equitable estoppel claim, failing to note the distinctions between the two. As discussed below,

waiver and estoppel are separate claims. The lack of clarity on behalf of the parties is understandable because, as one treatise proclaimed in exasperation, "[t]he terms 'waiver' and 'estoppel' have been so frequently confused and abused in decisions on insurance law that it seems preferable to define those terms accurately in the inception of this discussion." Appleman, Insurance Law and Practice § 9251 at 488–89 (1981). Because the law is replete with inconsistency in distinguishing waiver from estoppel, we find that plaintiff has not abandoned her waiver claim.

The Fifth Circuit has recognized waiver as a viable claim under ERISA. *Pitts,* 931 F.2d at 357. In *Pitts,* the Fifth Circuit found that the insurer had waived a condition of the policy upon which it attempted to rely in denying coverage. *Id.* The group policy at issue in that case required a minimum number of ten employees to enroll before coverage would be effective. However, the insurer in that case accepted premiums from the employer on the group policy for five months after knowing for all five months, "beyond all doubt," that the insured was the only person remaining on the policy. *Id.* Thus, it was absolutely clear that the number of enrollees to the policy fell well below the number required for quite some time. The group policy in *Pitts* was a small policy, magnifying the failure of the policyholder to meet the eligibility requirements, and thus making clear that the insurer had knowingly waived the eligibility requirements.

In *Thomason v. Aetna Life Ins. Co.,* the Seventh Circuit left open whether waiver principles might apply, as part of the federal common law in the ERISA context, under other circumstances, but rejected the waiver argument made by the plaintiff in that case. 9 F.3d at 647–49. The court noted that waiver principles were not as well established as estoppel principles. *Id.* at 648. Some courts require either consideration or reliance for waiver. *See id.* In other cases, although the plaintiff did not prove reliance, the circumstances involved something more than a bare misrepresentation, often involving situations in which it was apparent that the insurance company was attempting to reap an unjust benefit, *e.g.,* accepting premiums after the insurer's defense to coverage was known and clear, thus giving the insurance company the option of keeping the premiums if beneficial to it or at its option returning the premiums and cancelling the policy when it was convenient to do so, *i.e.,* after a claim was made. *See id.,* n. 3. The plaintiff in *Thomason* could prove no reliance and did not adduce evidence of any such "unjust option" circumstance. Rather, plaintiff relied solely on two letters from the

insurer stating the plaintiff's group life insurance coverage had been extended without cost. *Id.* at 646. Thus, the *Thomason* plaintiff attempted to assert a "something-for nothing kind of waiver whereby [insurer] will be held to the terms of its misleading representations for no reason other than that it made them." *Id.* at 649.

██ We agree with the reasoning of the Seventh Circuit in *Thomason.* Like that court, we leave open whether in other circumstances waiver principles might apply under the federal common law in the ERISA context. However, we reject plaintiff's waiver argument under the circumstances of this case. We conclude that plaintiff has adduced insufficient evidence either of intentional relinquishment of a known right or of any unjust benefit circumstance. As noted above, the summary judgment record in this case clearly shows that defendant did not know beyond doubt that plaintiff was inactive (*i.e.,* not actively at work) at the crucial time—when the plan and his coverage became effective. Moreover, we conclude that plaintiff has failed to adduce evidence of any unjust benefit. Once United became aware that some enrollees might never have been actively at work, it immediately raised the issue of their eligibility. *See* Appleman, Insurance Law & Practice § 9256 at 365 and n. 14 (1981) and cases cited therein (under common law the insurer, after discovering misrepresentation of insured, is entitled to a reasonable time to make its investigation and determine what action should be taken). Although United accepted some premiums during the investigation and resolution of the problem, there is no evidence that United attempted to unjustly enrich itself at the expense of an ineligible plan participant.[6] Based on the circumstances in this case, and like the Seventh Circuit in *Thomason,* we decline to incorporate as part of the federal common law of ERISA a "something-for nothing" waiver claim like Hostetter urges in this case.

The record is clear that United did not knowingly and intentionally waive the eligi-

---

**6.** United promptly attempted to return the few premium payments that it had accepted upon

determining that Silk Greenhouse had erroneously included Hostetter on the eligibility list.

bility requirements of its plan. Thus, we hold that no issue of material fact exists supporting Hostetter's waiver claim in this case.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.