Timothy S. BOWERS, Plaintiff,

v.

**BLUE CROSS BLUE SHIELD OF GEORGIA, Defendant.**

**No. Civ.A. 1:97–CV–2980–RWS.**

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 28, 1998.

of the engine parts and possibly permanent de-

struction of the outboard motors.

Milton Dale Rowan, William Nathan Hershman, Rowan & Neis, Atlanta, GA, for Plaintiff.

Michael R. Hurst, Blue Cross Blue Shield, Atlanta, GA, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

STORY, District Judge.

Plaintiff brought this action for equitable relief pursuant to § 502 of the Employee Retirement Income Security Act, 29 U.S.C. § 1132 ["ERISA"]. This Court has jurisdiction under 28 U.S.C. § 1331. Presently pending are Plaintiff's Motion for Leave to File Brief in Excess of Page Limitation [7–1], Plaintiff's Motion for Summary Judgment [8–1], and Defendant's Motion for Summary Judgment [9–1]. Plaintiff's unopposed Motion for Leave to File Brief in Excess of Page Limitation [7–1] is **GRANTED**. After reviewing the entire record and considering the briefs of the parties, this Court enters the following order.

### I. FACTUAL BACKGROUND

Plaintiff became totally disabled on April 24, 1994 and left work due to Acquired Immune Deficiency Syndrome ["AIDS"]. At that time, Plaintiff was employed by Confederation Life Insurance Company and was covered by a group health insurance contract through his employer. On October 24, 1994, Plaintiff elected to continue his group health insurance coverage for a 29–month period as provided under ERISA as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ["COBRA"].[1] Plaintiff became eligible for Medicare on October 1, 1996 and started receiving Medicare benefits at that time.

Later, Plaintiff became concerned about the expiration of his COBRA coverage and inquired about an individual contract with Defendant Blue Cross Blue Shield of Georgia ["BCBS"]. When Plaintiff spoke with John Hudson, Manager of COBRA Solutions with BCBS, Plaintiff informed Hudson that Plaintiff was receiving Medicare benefits. Plaintiff also informed Hudson that he had been receiving benefits since October of 1996. Hudson advised Plaintiff to convert his continuation contract immediately because it was about to expire. Hudson testified by affidavit that he told Plaintiff receiving Medicare benefits terminated his COBRA eligibility and Plaintiff's COBRA coverage would terminate retroactively effective January 1, 1997, the date Plaintiff's employer group came to BCBS. Hudson also referred Plaintiff to the conversion department.

On February 3, 1997, Plaintiff went to the BCBS offices on Peachtree Road to apply for a conversion contract. Plaintiff completed an application and stated on the application that he was eligible for and had applied for Medicare benefits. Defendant issued Plaintiff an individual contract made effective retroactively from January 1, 1997. From February of 1997 until August of that same year, Defendant accepted premium payments and paid claims under Plaintiff's individual conversion contract.

On June 2, 1997, Plaintiff wrote a letter to Defendant to clear up a problem regarding his new account. In response, Defendant informed Plaintiff that it would credit his account and also informed Plaintiff that it was considering canceling his individual conversion contract because Plaintiff had become eligible for Medicare ten months earlier. In late August of 1997, Defendant informed Plaintiff that his individual conversion contract would definitely be canceled because of his Medicare eligibility. Defendant also informed Plaintiff that his coverage would not lapse until October 1, 1997.

---

1. Pub.L. 99–272, 100 Stat. 82, 222–237.

Plaintiff testified by affidavit that if Defendant had informed him that he would not be able to convert his COBRA coverage into an individual policy, he would have pursued other alternatives to secure coverage, such as seeking employment, and he would have been much more careful in his spending habits over the previous year.

Kimberly Brooks, Service Leader in the area of Direct Pay Membership, testified by affidavit that BCBS made a mistake when it offered Plaintiff conversion coverage. Plaintiff's conversion contract provides,

## ARTICLE 6

### LIMITATIONS

6.2 Governmental Programs

If you become eligible for Medicare or any other state or local government health care programs, benefits under this Contract will be reduced equal to the amount that would be paid by the other program. You should notify the Plan if you are eligible for another program because it may affect your eligibility for coverage under this contract (See Article 11.)

6.3 Excess Coverage Provision

This coverage pays for eligible expenses after any group health plans have paid. In no case shall the total payment of this health care coverage and other coverage exceed 100% of the eligible charges. Eligible expenses which are reimbursed by any group health care plan are not covered by this Contract.

. . .

## ARTICLE 11

### TERMINATION OF COVERAGE AND CONVERSION PRIVILEGES

11.1 Termination of Coverage

4. Should a Member become eligible for any type of group health insurance this conversion contract will be terminated with 30 days notice. You must contact Blue Cross Blue Shield if you become eligible for any type of group coverage, including governmental programs (Medicare and Medicaid) and employer sponsored programs. Any benefits payable during the 30 day period will be paid based on the provisions set forth in Articles 6.2 and 6.3

On October 2, 1997 the parties entered a consent order in which Defendant agreed to allow Plaintiff's individual conversion contract to remain in full force and effect pending final resolution of this case on the merits.

## II. LEGAL ANALYSIS

A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that a district court shall grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to any material fact and that (2) the moving party is entitled to judgment as a matter of law." The applicable substantive law identifies which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

When the nonmovant has the burden of proof at trial, the movant may carry its burden at summary judgment by demonstrating the absence of an essential element of the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.E.2d 265 (1986). For issues which the movant has the burden of proof at trial, the movant must make an affirmative showing that on all essential elements of the case no reasonable jury could find for the nonmovant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993).

In determining whether the movant has met its burden, the district court must view the evidence and all factual inferences in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14. If the movant meets its burden, the nonmovant then has the burden of showing that summary judgment is not appropriate

**1378**

by setting forth "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e).

B. Plaintiff's Motion for Summary Judgment

■ ERISA governs the terms of the contract at issue in the case at bar. Plaintiff exercised his option to obtain continuation coverage under 29 U.S.C. § 1162. This same provision requires each ERISA group health plan to provide the option of converting CO-BRA continuation coverage into an individual health insurance plan. 29 U.S.C. § 1162(5). Consequently, because the right to a COBRA conversion policy arises from the existence of an ERISA plan, the terms of the contract at issue are governed by ERISA. *See Beal v. Jefferson–Pilot Life Ins. Co.*, 798 F.Supp. 673, 675 (S.D.Ala.1992); *but see Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1345–47 (11th Cir.1994) (where Court declined to decide whether conversion of policy might defeat ERISA coverage); *see also, Mimbs v. Commercial Life Ins. Co.*, 818 F.Supp. 1556, 1560 (S.D.Ga.1993) (where court drew a distinction between claims arising from the right to convert to an individual policy and claims arising from the conversion policy itself).

■ In a civil enforcement action brought pursuant to 29 U.S.C. § 1132(A)(1)(B), the plaintiff has the burden of establishing his entitlement to benefits under the plan. *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir.1998). As in the case at bar, where the plan administrator does not reserve the discretionary authority to interpret provisions of the plan, the district court should apply a de novo standard in reviewing a decision regarding benefit eligibility. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Marecek v.*

*BellSouth Telecommunications, Inc.*, 49 F.3d 702, 705 (11th Cir.1995).

■ Plaintiff contends under the federal common law Defendant waived any right to cancel Plaintiff's contract and is barred from canceling Plaintiff's contract under the doctrine of equitable estoppel. Application of the federal common law of ERISA must be consistent with the plain language of the statute and the policies behind the federal statutory scheme. *Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir.1986).[2] "ERISA has two central goals: (1) to protect the interests of employees and their beneficiaries in employee benefit plans and (2) uniformity in the administration of employee benefit plans." *Horton*, 141 F.3d at 1041 (11th Cir. 1998) (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983), *Smith v. Jefferson Pilot Life Ins. Co.*, 14 F.3d 562, 570–71 (11th Cir. 1994)).

1. Waiver

■ In *Glass v. United of Omaha Life Ins. Co., supra*, the Eleventh Circuit specifically left open the issue of whether waiver principles apply under the federal common law of ERISA. The plaintiff in *Glass* sought to apply the principle of waiver based solely on the fact that the insurer made a misleading representation. The Eleventh Circuit rejected Plaintiff's argument, holding that the plaintiff failed to produce sufficient evidence of an "the intentional relinquishment of a known right or of any unjust benefit circumstance." *Glass*, 33 F.3d at 1348.

In the case at bar, Section 11.1 of the Plan, gives BCBS the right to terminate the contract if the insured "becomes eligible for any type of group health insurance" including Medicare or Medicaid.[3] Plaintiff argues Defendant waived any right to terminate the

---

**2.** "Resort to the federal common law is generally inappropriate when its application would: (1) conflict with the statutory provisions of ERISA; (2) discourage employers from implementing plans governed by ERISA; or (3) threaten to override the explicit terms of an established ERISA benefit plan." *First Capital Life Ins. Company–In Conservation v. AAA Communications, Inc.*, 906 F.Supp. 1546, 1557 (N.D.Ga.

1995) (citing *Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1452 (4th Cir.1992)).

**3.** The Court will not apply the principle of contra proferentem (construe the terms of a contract against the drafter) as suggested by Plaintiff because the Eleventh Circuit has yet to adopt this rule of construction. *See AAA Communications*, 906 F.Supp. at 1557.

contract, and Plaintiff is entitled to summary judgment. However, there is an issue of fact of whether Defendant voluntarily and intentionally relinquished a known right. When Plaintiff spoke with Hudson, Plaintiff informed Hudson that Plaintiff was receiving Medicare benefits. Similarly, the application Plaintiff completed indicates that Plaintiff was eligible for Medicare and that Plaintiff was receiving benefits as suggested by the Medicare number provided by Plaintiff. However, Hudson testified that he told Plaintiff receiving Medicare benefits terminated his COBRA eligibility. Likewise, Brooks testified that BCBS made a mistake when it offered Plaintiff conversion coverage. The testimony of Defendant's witnesses does not establish that Defendant voluntarily and intentionally relinquished a known right. The testimony raises an issue of fact with regard to Defendant's intent.

Plaintiff also failed to demonstrate the existence of an unjust benefit. Brooks stated in her affidavit that BCBS has paid out more money in benefits for Plaintiff than it has received in premiums. Therefore, Plaintiff is not entitled to summary judgment on the issue of waiver. *Cf. Variety Children's Hosp., Inc. v. Blue Cross Blue Shield of Fla.,* 942 F.Supp. 562, 570 (S.D.Fla.1996) (where plaintiff tendered premiums and insurer accepted them but later refunded premiums, court found no intentional relinquishment of a known right and no unjust benefit).

### 2. Equitable Estoppel

 Equitable estoppel applies only when the relevant provisions of an ERISA plan are ambiguous and representations are made which constitute an oral interpretation of the ambiguous provisions.[4] *Glass,* 33 F.3d at 1347. Whether a contract provision is ambiguous is an issue of law to be decided by the court. *See e.g., Stewart v. KHD Deutz of America,* 980 F.2d 698 (11th Cir.1993) A provision is ambiguous if reasonable persons could disagree as to its meaning and effect.

*Kane v. Aetna Life Ins.,* 893 F.2d 1283, 1285 (11th Cir.1990). In the case at bar, the termination and limitation provisions of the plan are ambiguous. Reasonable persons could disagree as to the meaning of these provisions. Section 11.1(4) provides that if a member "[s]hould [ ] become eligible for any type of group health insurance this conversion contract will be terminated." This section may suggest that the event of Medicare eligibility prior to issuance of the contract and the continuation of Medicare eligibility anytime subsequent to issuance of the contract terminates coverage. On the other hand, this provision may indicate that Medicare eligibility which predates issuance of the contract does not terminate coverage. *Cf. Geissal v. Moore Medical Corp.,* — U.S. ——, 118 S.Ct. 1869, 1872, 141 L.Ed.2d 64 (1998) (conflict among the Circuits as to statutory construction of COBRA provision 29 U.S.C. § 1162(2)(D)(i) which provides that COBRA coverage may cease on "the date on which the qualified beneficiary first becomes, after the date of the election covered under any other group health plan").

The limitations provisions are also ambiguous. Under Section 6.2, "If you become eligible for Medicare or any other state or local government health care programs, benefits under this Contract will be reduced equal to the amount that would be paid by the other program." While the first sentence of this provision indicates only a reduction in benefits as a result of Medicare eligibility, the second sentence—"*You should notify the* Plan if you are eligible for another program because it may affect your eligibility for coverage under this contract (See Article 11.),"—suggests that Medicare eligibility may result in a denial of coverage. Similarly, Section 6 .3 is ambiguous because the first sentence merely limits coverage to eligible expenses remaining after any other group health plan has paid. Yet the last sentence of Section 6.3 states that eligible expenses which are reimbursed by any group health

---

4. The federal common law of equitable estoppel is not available to plaintiffs in cases involving oral amendments to or modifications of employee plans governed by ERISA. *Kane v. Aetna Life Ins.,* 893 F.2d 1283, 1285 (11th Cir.1990) (citing *Nachwalter v. Christie,* 805 F.2d 956, 960 (11th Cir.1986)); *see also, Lordmann Enterprises v. Equicor, Inc.,* 32 F.3d 1529, 1530 (11th Cir.1994) (ERISA forbids oral modifications of plan terms). Consequently, Plaintiff does not rely on Hudson's representations as oral amendments to or modifications of the contract.

care plan are not covered. Furthermore, there is no language which limits the effect and application of Sections 6.2 and 6.3 to situations in which the termination provision is applicable. Because the provisions identified above are ambiguous, Plaintiff is permitted to submit evidence that Defendant should be estopped from terminating coverage based on representations which constitute an oral interpretation of the plan.

■ To prevail on a claim of equitable estoppel under the federal common law, Plaintiff must establish that (1) Defendant misrepresented material facts, (2) Defendant was aware of the true facts, (3) Defendant intended that the misrepresentation be acted on or had reason to believe Plaintiff would rely on it, (4) Plaintiff did not know, nor should have known, the true facts, and (5) Plaintiff reasonably and detrimentally relied on the misrepresentations. *National Companies Health Benefit Plan v. St. Joseph's Hosp. of Atlanta, Inc.*, 929 F.2d 1558, 1572 (11th Cir.1991), *abrogated on other grounds, Geissal v. Moore Medical Corp.,* ── U.S. ──, 118 S.Ct. 1869, 141 L.Ed.2d 64 (1998).[5]

■ Plaintiff argues the issuance of the contract constitutes a material misrepresentation. Plaintiff is correct in his assertion that misrepresentations may include acts, silence and omissions. *See St. Joseph's,* 929 F.2d at 1572–73, n. 14. Defendant issued Plaintiff a policy representing that Plaintiff was eligible for conversion coverage in spite of his Medicare eligibility. Furthermore, Defendant's acceptance of premiums indicated that the contract was not mistakenly issued. Also, Hudson's statements to Plaintiff contain material misrepresentations. Hudson advised Plaintiff to convert his continuation contract immediately because it was about to expire. Although Hudson stated that receiving Medicare benefits terminated Plaintiff's COBRA eligibility, Hudson nevertheless, referred Plaintiff to the conversion department. These statements led Plaintiff

to believe that neither Medicare eligibility nor receipt of Medicare benefits rendered Plaintiff ineligible for a conversion policy.

With regard to the second element, Defendant was aware of the true facts as indicated by Plaintiff's completed application. Plaintiff's application shows that he was eligible for Medicare and had applied for Medicare. Plaintiff even provided a Medicare number which would suggest that Plaintiff had received or was receiving Medicare benefits. Defendant, under its interpretation of the policy, knew Plaintiff was ineligible for a conversion policy because he was eligible for Medicare.

Third, Defendant intended that Plaintiff rely on the misrepresentations as indicated by Hudson's referring Plaintiff to the conversion department and Defendant's continued acceptance of premiums. Fourth, Defendant argues Plaintiff knew or should have known the true facts. However, the terms of the contract are ambiguous and there is no evidence that Plaintiff knew he was not entitled to conversion coverage. There is an issue of fact of whether Plaintiff should have known he was not entitled to coverage. Hudson testified that he told Plaintiff receiving Medicare benefits, terminated COBRA eligibility. If Plaintiff was no longer entitled to COBRA coverage, then he was also ineligible for conversion coverage under the terms of ERISA. Because an issue of fact remains as to whether Plaintiff should have known he was not entitled to conversion coverage, Plaintiff is not entitled to summary judgment.

With respect to the last element, Defendant contends Plaintiff did not reasonably or detrimentally rely on Defendant's misrepresentations. However, there is an issue of fact of whether Plaintiff's reliance was reasonable. Plaintiff does not deny that Hudson informed him that receiving Medicare benefits terminated his COBRA eligibility. Consequently, there is a factual issue of whether Plaintiff reasonably relied on Defendant's misrepresentations in spite of Hudson's com-

---

**5.** In *St. Joseph's,* the Eleventh Circuit held preexisting group health coverage makes a plan participant ineligible for continuation coverage under ERISA. The Court also held that under the facts of that case the defendant was estopped from denying liability to the plaintiffs. Because the

Supreme Court in *Geissal* discussed only the statutory construction of the COBRA provision found at 29 U.S.C. § 1162(2)(D)(i), *Geissal* appears to leave in tact the Eleventh Circuit's holding regarding equitable estoppel.

ments regarding the effect of receiving Medicare benefits.[6] Defendant argues Plaintiff's reliance was not detrimental because Plaintiff could not have obtained other employer sponsored coverage because he was disabled. However, Plaintiff's disability does not necessarily prohibit him from obtaining other employment and insurance. Moreover, Plaintiff has submitted evidence that as a result of relying on Defendant's representations, he is no longer eligible for coverage that he would have been eligible for prior to expiration of his COBRA policy. Because fact issues remain, Plaintiff is not entitled to summary judgment on the issue of equitable estoppel. *See Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 648 (7th Cir.1993) (facts that give rise to an estoppel need not support a finding of waiver).

C. Defendant's Motion for Summary Judgment

In accordance with the standard for summary judgment as stated above and the analysis of the issues of waiver and estoppel, this Court finds that Defendant is not entitled to summary judgment on the issue of waiver. Although Defendant's evidence shows that there is an absence of evidence of an unjust benefit as required by *Glass,* there is an issue of fact regarding Defendant's intent. As to estoppel, Defendant is also not entitled to summary judgment. Defendant failed to point to an absence of evidence on any essential element of Plaintiff's estoppel claim. Therefore, Defendant's motion must be denied.

### III. ORDER

Plaintiff's Motion for Leave to File Brief in Excess of Page Limitation [7–1] is **GRANTED.** Plaintiff's Motion for Summary Judgment [8–1] is **DENIED.** Defendant's Motion for Summary Judgment [9–1] is **DENIED.**

**SO ORDERED.**

---

6. Defendant argues that if Plaintiff had read the policy he would have known he was ineligible, but the policy's terms are ambiguous.