Ronnie A. **BURGER**, Plaintiff,

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA,** Defendant.

No. Civ.A. 1:98CV2794TWT.

United States District Court, N.D. Georgia, Atlanta Division.

July 20, 2000.

Milton Dale Rowan, William Nathan Hershman, Chip Rowan & Associates, Atlanta, GA, for Ronnie A. Burger, plaintiff.

Harvey Scott Gray, Smith Howard & Ajax, Atlanta, GA, Harvey Scott Gray, Gray Rust St. Amand Moffett & Brieske, Atlanta, GA, for Life Insurance Company of North America, defendant.

### ORDER

THRASH, District Judge.

This case arises under § 502 of the Employee Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"). At issue is the overpayment of disability benefits. It is before the Court on Plaintiff's Motion for Summary Judgment [Doc. 25] and Defendant's Motion for Summary Judgment [Doc. 29]. For the reasons set forth below, both motions are granted in part and denied in part.

### I. BACKGROUND

Plaintiff Ronnie Burger is a long time employee of Turner Broadcasting System ("TBS"). While working for TBS in 1994, Mr. Burger became partially disabled. After he applied for disability benefits based upon his disability, Mr. Burger continued to work part-time at TBS. Since 1994, he has received benefits under a long-term group disability policy issued to TBS by Defendant Life Insurance Company of North America ("LINA"). Between 1995 and 1998, LINA paid Mr. Burger more than he was entitled to receive under the policy. Mr. Burger seeks to establish by virtue of waiver or estoppel that LINA is precluded from recovering these excess benefits. Mr. Burger also seeks to prevent LINA from reducing his benefits in the future. It is undisputed that TBS' employee benefits plan is governed by ERISA.

Mr. Burger has worked for TBS for more than ten years. While working for TBS in 1994, he became partially disabled. He applied for and was approved to receive disability benefits under the LINA policy. Mr. Burger has been receiving disability benefits since July, 1994, and continues to receive them. Under the terms of the disability policy, the amount of benefits a disabled employee in Mr. Burger's category can receive is calculated as follows:

(1) The lesser of: (a) 65% of the first $5,000 of monthly earnings, then 60% of the next $36,666 of monthly earnings rounded to the nearest dollar; or (b) $25,250., for an overall maximum monthly benefit; and (2) minus Other Benefits for that month.

[Doc. 25, Exh. B, p. 7]. Additionally, the policy provides that a partially disabled employee who continues to work part-time will receive reduced benefits after receiving full-benefits for one year. If an employee returns to work and is earning less than 80% of what he previously earned, his monthly benefit is calculated as follows:

(1) the Monthly Benefit as figured above for the first 12 months Residual Disability Benefits are payable; and (2) the Monthly Benefit as figured above *minus 50% of the Employee's monthly earnings* received while he is Residually Disabled after the first 12 months Residual Disability Benefits are payable.

[Doc. 25, Exh. B, p. 7b] (emphasis added). Thus, under the terms of the policy, LINA had the right to reduce Mr. Burger's benefits after 12 months.

It is undisputed that LINA knew that Mr. Burger was working part-time. LINA also knew that TBS paid Mr. Burger approximately half of his former annual salary of $50,000. It is also undisputed that during the three year period from 1995 to 1998, Mr. Burger informed LINA on several occasions that he was employed part-time by TBS. He even provided LINA with income tax-returns reflecting the exact amount of his earnings at TBS.

Knowing of Mr. Burger's part-time employment, LINA continued to pay Mr. Burger full benefits every month from July, 1995, until July, 1998.[1] Beginning in July, 1995, 12 months after Mr. Burger began receiving benefits, LINA was entitled to reduce his benefits based on his part-time income. Nevertheless, LINA paid full benefits for three years.

In July, 1998, LINA discovered its mistake. After paying Mr. Burger full benefits for four years, LINA sent Mr. Burger a letter informing him that he had been overpaid and would have to repay the overpayment. [Doc. 25, Exh. C]. LINA stated that between 1995 and 1998, it had mistakenly paid Mr. Burger benefits without reducing by 50% the amount of his earnings from part-time employment. In the letter, LINA demanded that Mr. Burger repay the overpayment of $31,685.04, or LINA would withhold half of his monthly benefit until the overpayment was repayed. LINA determined that it had overpaid Mr. Burger based on the policy's definition of "residual disability." As stated above, that provision of the policy reduces the monthly benefit for employees who continue to work part-time while receiving disability benefits. The policy defines residual disability as when an employee *"returns* to any work for wage of profit." [Doc. 25, Exh. B, p. 3c] (emphasis added). In July of 1998, LINA reduced Mr. Burger's monthly benefit check from $2,041.67 to $1,123.49. LINA contends this is the correct monthly amount it should have paid Mr. Burger beginning July of 1995. Then, in August of 1998, to recoup the alleged overpayment, LINA again reduced by half Mr. Burger's monthly benefit to $561.74. This reduced payment of $561.74 continued for the months of September, October, November and December, 1998. Beginning in January of 1999, LINA resumed paying Mr. Burger $1123.49 per month, which amounts to

benefits reduced to reflect part-time work but without any reduction for overpayment. According to Mr. Burger, the reduction in monthly benefits has forced him to withdraw approximately $1,000 per month from his savings.

Between July of 1994, and July of 1998, Mr. Burger based all of his financial decisions on LINA's payment to him of full benefits. His income consisted of his long-term disability payments from LINA and his salary from part-time employment with TBS. Relying on his income level, Mr. Burger purchased a new residence in November of 1996. The purchase more than doubled his monthly mortgage payment from $638.82 to $1,420.76. Mr. Burger also purchased a new automobile in August of 1996. In deciding whether he could afford a new residence and a new automobile, Mr. Burger included his full benefit from LINA as part of his monthly income. Mr. Burger also spent considerable sums of money in other areas that he would not have spent had he known his benefit would be reduced. Mr. Burger asserts that he would never have incurred these increased monthly expenses, nor purchased these goods and services if he had known his monthly benefit was going to be reduced.

In his response to the Defendant's Motion for Summary Judgment, Mr. Burger contends that he is not residually disabled because he never "returned" to work. His employment with TBS never ended; Mr. Burger only changed his employment status from full-time to part-time. In response, LINA first complains that Mr. Burger never made any such allegation in his Complaint or during any portion of the litigation prior to his deposition on January 20, 2000, 11 days before expiration of the discovery period. LINA also contends that Mr. Burger does fall within the definition of residually disabled.

---

1. In his Motion for Partial Summary Judgment, Mr. Burger contends that during the four years when LINA was intending to pay him full benefits it miscalculated the amount he was due under the policy. Instead of paying him $2,654 per month, LINA only paid him $2,041.67 during this period. No claim for underpayment was asserted in the Complaint. Therefore, this claim is disregarded.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the non-movant. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

This case was dismissed by Consent Order on February 12, 1999, after the parties reached a settlement [Doc. 11]. After the settlement collapsed, the case was re-opened by Consent Order on November 17, 1999. [Doc. 16]. Pursuant to the Consent Order re-opening the case, the discovery period expired February 1, 2000. The Local Rules of this Court require that "[m]otions for summary judgment shall be filed as soon as possible, but, unless otherwise ordered by the court, not later than twenty (20) days after the close of discovery ..." L.R. 56.1(C). Consequently, the last day for the parties to submit motions for summary judgment was February 21, 2000. LINA filed its motion on March 9, 2000, 17 days after the deadline for filing such motions. Although LINA's motion is untimely, the Court will consider it in the interests of justice and because it is mainly the reverse of the Plaintiff's motion.

## A. WAIVER

Mr. Burger's Amended Complaint states two theories of recovery: waiver and equitable estoppel. In a civil enforcement action brought pursuant to 29 U.S.C. § 1132(a)(1)(B), the plaintiff has the burden of establishing his entitlement to benefits under the plan.[2] In his Amended Complaint, Mr. Burger alleges that LINA had actual knowledge in 1995 of his part-time work, and through this knowledge, of its right to recalculate his benefits based upon his part-time income. Because LINA failed to recalculate his benefits for three years after such action was permitted by the policy, Mr. Burger contends that LINA knowingly waived its right to do so, and also waived its right to recoup any alleged overpayment.

Whether LINA waived its rights under the policy must be determined by ERISA. ERISA is designed to federalize the regulation of employee benefit plans. *Glass v. United Omaha Life Ins. Co.*, 33 F.3d 1341, 1347 (11th Cir.1994). Congress left gaps in ERISA which federal courts must fill with "a federal common law of rights and obligations under ERISA-regulated plans." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). This federal common law of ERISA may be influenced by state law, but must adhere to the congressional policy underlying ERISA. *Glass*, 33 F.3d at 1347. Consequently, not all common law insurance principles—such as waiver—automatically apply to ERISA-regulated insurance policies. *Id.*

The Eleventh Circuit has left open the question of whether waiver is a valid theory of recovery under the federal common law interpreting ERISA. In *Glass*, 33 F.3d at 1347, the insured was ineligible for

---

2. "A civil action may be brought ... (1) by a participant or beneficiary ... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan...." 29 U.S.C. § 1132(A)(1)(B).

his employer's insurance because he was on a leave of absence at the plan's inception. Nevertheless, the insurer initially accepted premiums from the insured for health and life insurance. The insurer later raised questions about the insured's eligibility for the plan, and ultimately denied coverage when the insured died. Affirming summary judgment in favor of the insurer, the Eleventh Circuit addressed for the first time the issue of waiver in the federal common law interpreting ERISA. Rather than foreclosing the possibility of recovery pursuant to a theory of waiver, the court left open the question of whether waiver principles might apply as part of ERISA federal common law. The court limited its holding to the facts in the case and found that waiver did not apply. *Id.*, at 1348. Important to the court's decision was a lack of evidence of intentional relinquishment of a known right or of any unjust benefit to the insurer. The record clearly showed that the insurer in *Glass* did not know beyond doubt that the insured was on a leave of absence at the plan's inception. Moreover, there was no evidence of unjust benefit to the insurer. As soon as the insurer became aware that some employees were on leave of absence, it immediately raised the issue of their eligibility for participation in the plan.

■ In *Glass*, the court noted that the Fifth Circuit has held that, under the federal common law applicable to ERISA, an insurer may through its conduct waive a right that it might have otherwise had under an insurance policy. In *Pitts v. American Sec. Life*, 931 F.2d 351 (5th Cir.1991), the Fifth Circuit found that the insurer was precluded from denying coverage because it had waived the asserted condition of the policy. The group policy at issue required a minimum of ten enrolled employees before coverage began. *Id.* at 357. Nevertheless, the insurer accepted premiums for five months after learning "beyond all doubt" that the insured was the only person on the policy. *Id.* Thus, it was clear that the prerequisite for coverage—ten enrolled employees— had not been met. *Id.* The Fifth Circuit

cited, among other authorities, the Restatement of Restitution: "An unreasonable delay in manifesting an avoidance of a transaction after the acquisition of knowledge of the facts terminates the power of rescission for fraud *or mistake* ... if the interest of the transferee or of a third person are harmed or were likely to be harmed by such delay." Restatement of Restitution § 64 (1937) (emphasis added). The court looked only at the unilateral action of the insurer in failing to assert a known defense to the claim. *Pitts*, 931 F.2d at 357. The insurer accepted premiums and paid benefits after learning that the policy requirements had been breached without reserving its rights. The insurer thereby waived its right to assert that particular defense to its liability under the policy. *See also, Rhorer v. Raytheon Eng'rs and Constructors, Inc.*, 181 F.3d 634 (5th Cir.1999) (finding sufficient evidence to defeat summary judgment that the employer voluntarily relinquished its rights under ERISA); *Bowers v. Blue Cross Blue Shield of Georgia*, 16 F.Supp.2d 1374, 1379 (N.D.Ga.1998) (same).

■ If it is ever appropriate to apply waiver principles under ERISA, then this is such a case. Waiver is the "voluntary or intentional relinquishment of a known right." *Pitts*, 931 F.2d at 357. Distinct from equitable estoppel, discussed below, waiver does not require the element of detrimental reliance, although such reliance is present here. *Glass*, 33 F.3d at 1347. There is compelling evidence that LINA voluntarily relinquished its right to recalculate Mr. Burger's benefits. Whereas in *Glass* it was "beyond doubt" that the insurer did not know of its right to deny coverage, here it is undisputed that LINA knew of Mr. Burger's continued part-time employment for over three years before it took any action. Indeed, Mr. Burger informed LINA of his employment on several occasions, and even forwarded to LINA copies of his federal income tax returns. Mr. Burger's part-time work would have

entitled LINA to reduce his benefits by half of his monthly earnings as early as July, 1995, 12 months after his benefits began. Knowing of his continued work and of its right to reduce benefits, LINA continued to pay full benefits to Mr. Burger for three years. Only after overpaying more than $30,000 did LINA attempt to recalculate Mr. Burger's benefits and recoup the overpayment. In the meantime, Mr. Burger relied on his fixed income in purchasing a home, a car, and other goods and services. Under these circumstances, LINA knowingly and intentionally waived the requirements of its plan.[3]

■ ERISA provides for the equitable recovery of benefits erroneously paid. The statute allows a civil action by "a participant, beneficiary, or fiduciary ... to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B).[4] Where an insurer sleeps on its rights, however, and the insured relies thereon, the insurer loses through waiver its right for an equitable recovery. "Where an insurer, with knowledge of facts vitiating a policy, by acts, declarations, or dealings leads an insured to believe that he or she is protected under the policy, such acts, transactions, or declarations operate as a waiver of the forfeiture and preclude the insurer from relying thereon as a defense to a suit on the policy." 16B Appleman, Ins.Law and Practice, § 9081 at 504; *see also, Swint v. Protective Life Ins. Co.,* 779 F.Supp. 532, 560 (S.D.Ala.1991) (finding the insurer waived its rights to deny coverage under a policy governed by ERISA where it continued coverage after learning of the insured's ineligibility). On the theory of waiver, Plaintiff is entitled to partial sum-

mary judgment with respect to the benefits paid through July, 1998. Obviously, there was no voluntary or intentional relinquishment of a known right as to benefits payable after July, 1998, and the Defendant is entitled to summary judgment with respect to those benefits. For the same reason, Plaintiff is entitled to summary judgment with respect to Defendant's claim for restitution, and he is entitled to recover $2,808.70 that was wrongfully withheld from his benefit checks after July, 1998.

## B. EQUITABLE ESTOPPEL

■ For his second theory of recovery, Mr. Burger contends that LINA should be equitably estopped from denying his continued eligibility for full benefits. Mr. Burger contends that the provisions of the policy relating to recalculation of benefits are ambiguous. Further, he contends that LINA's continued payment of the full benefit to him amounted to a misrepresentation that Mr. Burger was entitled to the full benefit. Mr. Burger asserts that he reasonably relied on this misrepresentation, and made financial decisions based on this reliance. In the Eleventh Circuit, the beneficiary of an ERISA plan may recover benefits under a theory of equitable estoppel only in very narrow circumstances when (1) the provisions of the plan at issue are ambiguous, and (2) representations are made which constitute an oral interpretation of the ambiguous plan language. *Glass,* 33 F.3d at 1347. Importantly, estoppel is not available for oral modifications—as distinguished from interpretations—or when the written plan is unambiguous. *Id.* Here, the policy language unambiguously provides for reduced benefits for partially disabled beneficiaries

---

3. This case is distinguishable from an earlier holding by this Court finding that waiver did not apply in an ERISA case. In *Katz v. ALLTEL Corp.,* 985 F.Supp. 1157, 1162 (N.D.Ga.1997), the Court could not "discern [any] material difference between [plaintiff's] waiver and equitable estoppel claim." *Id.* The Plaintiff made no arguments advancing

her waiver claim. Here, Mr. Burger clearly separates his waiver and equitable estoppel arguments. Whereas the later is foreclosed as discussed *infra,* the former remains available.

4. The same statute also provides the authority for Mr. Burger's waiver claim.

who continue to work part-time. The policy states that the monthly benefit is reduced by "50% of the Employee's monthly earnings received while he is Residually Disabled after the first 12 months Residual Disability Benefits are payable." [Doc. 25, Exh. B, p. 7b]. A reading of the policy clearly puts one on notice that if an employee continues working and earns wages while disabled, the policy benefits are reduced after 12 months.

■ Mr. Burger argues that the policy language is ambiguous in permitting a reduction if an insured "returns" to work. The policy allows for a reduction in benefits for an individual who is "Residually Disabled." Defining residual disability, the policy states that "[a]n Employee will be considered Residually Disabled if, while he is Disabled, he returns to any work for wage or profit." [Doc. 25, Exh. B, p. 3c]. This definition is not ambiguous. Mr. Burger returned to work each day he remained an employee of TBS regardless of his part-time status and irrespective of the fact that he never quit his employment. Thus, Mr. Burger's motion for summary judgment as to his claim for equitable estoppel should be denied, and the Defendant's should be granted.

## IV. CONCLUSION

The Defendant's unopposed Motion for Leave to Submit Affidavit [Doc. 32] is GRANTED. For the foregoing reasons, Plaintiff's Motion for Summary Judgment [Doc. 25] is hereby GRANTED as to the claim of waiver and Defendant's claim for restitution; and DENIED as to the claim of equitable estoppel. Defendant's Motion for Summary Judgment [Doc. 29] is hereby DENIED as to the claim of waiver and GRANTED as to the claim of equitable estoppel. The Clerk is directed to enter judgment in favor of the Plaintiff in the amount of $2,808.70, and the Defendant is ordered to continue benefit payments for which the Plaintiff is otherwise eligible without any offset for the alleged overpayments prior to July, 1998.