Arnold **KARP**, Plaintiff,

v.

The **GUARDIAN LIFE INSURANCE COMPANY OF AMERICA**, Defendant.

No. CIV.A. 4:04–CV–159.

United States District Court, S.D. Georgia, Savannah Division.

March 8, 2006.

---

Thomas R. Herndon, of Herndon & Costner, P.C., of Savannah, GA, for Plaintiff.

H. Sanders Carter, Jr., and Stacia L. Guthrie of Carter & Ansley LLP, Atlanta, GA, for Defendant.

## ORDER

MOORE, Chief Judge.

Before the Court is Defendant's Motion for Summary Judgment. (Doc. 14.) After careful consideration, and for the reasons set forth below, Defendant's motion is **GRANTED**.

## BACKGROUND[1]

Plaintiff worked for Defendant beginning in July of 1996 as a field representative soliciting applications for contracts of insurance underwritten by Defendant. Plaintiff was eligible to and did participate in an employee welfare benefit plan sponsored and maintained by Defendant. Benefits under the plan include both disability and health insurance benefits. The disability coverage and benefits are described in Group Policy No. G–8–f–FC–REV ("the Disability Policy"). Pertinently, the Disability Policy extends disability benefits to eligible classes of employees, including salaried field representatives such as Plaintiff. Disability benefits are provided for twenty-four months to those employees that are "totally unable to perform all of the material duties of his or her regular occupation due to sickness or injury." (Doc. 14, Ex. 2 at 37.) After receiving benefits for twenty-four months, former employees continue to receive disability benefits if they are "totally unable to perform the material duties of any suitable occupation." *Id.* Total disability shall not exist under the Disability Policy once "the

employee is actually engaged in his or her own occupation or any other gainful occupation." *Id.*

Defendant provides health care and dental benefits under Group Health Plan Number 505/506 ("the Group Health Plan"). (Doc. 14, Ex. 3.) Classes eligible for coverage under the Group Health Plan include full time field representatives and disabled former employees who are receiving disability benefits under the Disability Policy. (*Id.* at 8.) An employee or former employee's coverage under the Group Health Plan terminates on the day he is no longer a member of an eligible class. (*Id.* at 16–17.)

During the course of his employment, Plaintiff was stricken with a number of debilitating medical conditions including severe degenerative disk disease. During the year 2001, he had twelve surgeries. Subsequently, he was diagnosed with cancer. On December 14, 2000, Plaintiff submitted a claim to Defendant for total disability benefits, reporting that he could no longer perform the duties of a Field Representative.

Defendant initially provided Plaintiff short term disability benefits until March 29, 2001. On April 20, 2001, Defendant wrote to Plaintiff and advised him that his employment had terminated and his short term disability benefits had ended on March 29, 2001. Defendant explained that Plaintiff would receive long term disability benefits beginning on March 30, 2001. It further laid out that Plaintiff would continue to be covered by the Group Health Plan, at no cost, as long as he was a disabled former employee receiving bene-

---

1. The following facts are set forth in the light most favorable to Plaintiff, the non-moving party.

fits under the Disability Policy. Defendant paid long-term disability benefits and provided health insurance to Plaintiff for thirty months, through September 30, 2003.

On May 27, 2001, Plaintiff entered into a brokerage agreement with Thomas S. Inglesby, Jr., Defendant's general agent in Savannah, Georgia. During the years 2001, 2002, 2003, and 2004, Plaintiff worked as an insurance agent for Defendant under this agreement and also acted as an agent for numerous other insurance companies. Defendant has produced evidence that Plaintiff earned up to $80,801 in annual receipts from his insurance business during this time. Based on this evidence, Defendant concluded that Plaintiff was engaged in a gainful occupation, and, therefore, no no longer met the Disability Policy's definition of totally disabled. On February 24, 2003, Defendant notified Plaintiff that it no longer considered him eligible for disability benefits.

Plaintiff filed an appeal of Defendant's decision. During the six-month pendency of that appeal, through September 30, 2003, Defendant continued to provide Plaintiff disability benefits under the Disability Policy as well as medical coverage under the Group Health Plan. By letter dated December 15, 2003, Defendant advised Plaintiff of its final decision that additional disability benefits were not payable. Further, because Plaintiff was no longer considered a disabled former employee under the Disability Policy, his coverage under the Group Health Plan also ceased.

Before deciding to maintain Plaintiff's coverage under the Group Health plan during the six month pendency of his appeal, Defendant provided him documents advising him of his rights to have his coverage extended under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), Pub.L. No. 99–272, Title X, Section 1. Specifically, Defendant sent Plaintiff a letter on March 12, 2003 notifying him that he was eligible to extend his medical and dental coverage at a premium of $1,339.62 per month. Defendant included in the letter a pamphlet explaining the COBRA coverage and a continuation election form. In March of 2003, Plaintiff completed the election form and provided a cashier's check to Mr. Inglesby made payable to Defendant in the amount of $2,679.24.[2] (Doc. 25, Ex. D.)

With Defendant's assistance, Plaintiff filed an application with the Social Security Administration for disability benefits on May 8, 2002.[3] In August of 2003, an Administrative Law Judge found that Plaintiff was entitled to a period of disability commencing on October 3, 2000 and to an award of retroactive Social Security disability benefits. (Doc. 25, Ex. A.)

Plaintiff filed this action against Defendant on September 23, 2004 in the State Court of Chatham County, Georgia. The Complaint alleges that Defendant's "suspension and subsequent denial of the resumption of benefits was unlawful and in breach of the pertinent policies and provisions of the insurance plan." (Doc. 1 at 7.) It also contends that Plaintiff had submitted claims for medical payments and that Defendant wrongfully denied those claims. Plaintiff brings claims under theories of breach of contract, ordinary negligence,

---

2. The cashier's check was never deposited nor cashed by Defendant or Mr. Ingelsby. In fact, Defendant denies ever receiving the check.

3. Under the Disability Policy, Defendant is entitled to an off-set of a beneficiary's Social Security disability entitlements.

material misrepresentation, waiver, and estoppel. He also asserts claims under O.C.G.A. § 33–4–6 and the Medicare Secondary Payer Act, 42 U.S.C. § 1395. On September 23, 2004, Defendant removed the action to this Court based on federal question and diversity jurisdiction. After a period of discovery, Defendant filed the instant Motion for Summary Judgment on May 4, 2005. The parties have filed numerous reply and response briefs.

## DISCUSSION

### I. *Standard of Review*

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56 advisory committee's note). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The law governing the action determines whether an element is essential. *DeLong Equip. Co. v. Wash. Mills Abrasive Co.*, 887 F.2d 1499, 1505 (11th Cir.1989).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323, 106 S.Ct. 2548. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. *Thompson v. Metro. Multi–List, Inc.*, 934 F.2d 1566, 1583 n. 16 (11th Cir.1991). A dispute of material fact "is genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, if the nonmoving party's response to the summary judgment motion consists of only mere conclusory allegations, then the court must enter summary judgment in the moving party's favor. *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir.1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, [then] there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

To assess whether Defendant is entitled to summary judgment, the Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to Plaintiff. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). The Court must avoid weighing conflicting evidence. *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. 2505; *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 934 (11th Cir.1987). A mere "scintilla" of evidence supporting the opposing party's position, however, will not suffice. *See, e.g., Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990). Neverthe-

less, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton,* 883 F.2d 923, 933–34 (11th Cir.1989) (citation omitted).

## II. *Plaintiff's Federal Claims*

From his Complaint, it is not clear if Plaintiff seeks recovery of both long term disability benefits and medical benefits. However, from his briefs in opposition to the instant motion, it appears that he only seeks medical benefits and reimbursement for medical expenses. It is also apparent that Plaintiff concedes that the Disability Policy and Group Health Plan are employee welfare benefit plans subject to regulation by the Employee Retirement Income Security Act of 1974 ("ERISA"). Under ERISA, Plaintiff advances two arguments in support of his claims for medical benefits. First, he argues that due to the amendments to ERISA enacted by Congress through COBRA, Defendant was required by statute to provide him with continued health coverage. Second, he seeks to recover under theories of waiver and estoppel pursuant to federal common law governing ERISA claims.[4]

### A. *Plaintiff's Claim of Statutory Entitlement to Continued Medical Benefits Under COBRA*

COBRA's amendments to ERISA require employee group health plans to include options for continued coverage in certain instances. Specifically, 29 U.S.C. § 1161(a) states, "the plan sponsor of each group health plan shall provide, in accordance with this part, that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan." Continuation coverage must be identical to that coverage being provided to similarly situated beneficiaries with respect to whom a qualifying event has not occurred. 29 U.S.C. § 1162(1). The period of continuation coverage must extend anywhere from eighteen to thirty six months depending on the qualifying event. 29 U.S.C. § 1162(2). A plan sponsor can require a beneficiary who elects to continue coverage to pay a premium for that coverage. 29 U.S.C. § 1162(2)(A).

Defendant argues that it was not required to offer continuation coverage to Plaintiff because he did not lose coverage under the Group Health Plan "as the result of a qualifying event." COBRA defines "qualifying event" as one of six occurrences that, but for the continuation of coverage under COBRA, would cause a qualified beneficiary to lose medical benefits under an ERISA governed plan. 29 U.S.C. § 1163.[5] Defendant recognizes that Plaintiff underwent two of the events enumerated in § 1163. His employment was terminated, and he became entitled to

---

**4.** Plaintiff also brings claims under the Medicare Secondary Payer Act, 42 U.S.C. § 1395Y. The Act requires a group health plan to provide primary payment to those plan beneficiaries who are also covered by Medicare. 42 U.S.C. § 1395Y(b)(2)(A). In other words, when medical expenses are due to be paid by a group health plan and by Medicare, the plan must make primary payment. When a plan fails to make such primary payment, the Act provides a private cause of action for

damages in an amount double the amount due to be paid. 42 U.S.C. § 1395Y(b)(3)(A). As will be set forth below, the Court finds that Defendant is not under any obligation to pay Plaintiff's claimed medical expenses. Thus, it logically follows that Plaintiff's claims under the Medicare Secondary Payer Act must fail.

**5.** Title 29 U.S.C. § 1163 states in its entirety:
 For purposes of this part, the term "qualifying event" means, with respect to any cov-

benefits under Title XVIII of the Social Security Act. However, Defendant argues that these events did not trigger its obligation to provide Plaintiff with continued coverage under COBRA. For the reasons stated below, the Court agrees.

■ A "qualifying event" under § 1163 must be an occurrence that would result in the loss of medical benefits if it were not for the continuation of coverage under COBRA. 29 U.S.C. § 1163. Plaintiff's employment with Defendant was terminated on March 29, 2001, when Plaintiff's short-term disability benefits ended. However, Plaintiff continued to receive coverage under the Group Health Plan following his termination. Specifically, Defendant provided Plaintiff with the same medical benefits he had received as an active employee until September 30, 2003. Plaintiff received these thirty months of coverage because of his status as a disabled former employee under the Disability Policy. Defendant only terminated Plaintiff's medical benefits when it no longer considered him totally disabled. Thus, Plaintiff's coverage under the Group Health Plan did not cease because of his termination. Accordingly,

his termination does not meet the definition of a qualifying event. *See, Mansfield v. Chicago Park Dist. Group Plan,* 997 F.Supp. 1053, 1057 (N.D.Ill.1998) (termination not a qualifying event when same medical coverage continued automatically after termination).

Furthermore, even if the Court were to find that Plaintiff's termination caused his loss of coverage, COBRA would only require Defendant to offer coverage at a premium for twenty-nine months after the termination.[6] 29 U.S.C. § 1162(2). Defendant provided Plaintiff with coverage for thirty months after his termination at no charge. Thus, Defendant more than fulfilled any potential obligation to provide Plaintiff with continued coverage after his termination. *Chacosky v. Hay Group,* 1991 WL 12170, *8 (E.D.Pa.1991) (" 'a loss of coverage need not occur immediately after the event so long as the loss of coverage will occur before the end of the maximum coverage period.' ") (quoting 52 Fed.Reg. 22716, 22725 (1987)).

■ Plaintiff also contends that his entitlement to Medicare benefits meets COBRA's definition of a qualifying event.

---

ered employee, any of the following events which, but for the continuation coverage required under this part, would result in the loss of coverage of a qualified beneficiary:

(1) The death of the covered employee.

(2) The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment.

(3) The divorce or legal separation of the covered employee from the employee's spouse.

(4) The covered employee becoming entitled to benefits under title XVIII of the Social Security Act 42 U.S.C.A. § 1395 et seq.

(5) A dependent child ceasing to be a dependent child under the generally applicable requirements of the plan.

(6) A proceeding in a case under Title 11, commencing on or after July 1, 1986, with respect to the employer from whose

employment the covered employee retired at any time.

In the case of an event described in paragraph (6), a loss of coverage includes a substantial elimination of coverage with respect to a qualified beneficiary described in section 1167(3) of this title within one year before or after the date of commencement of the proceeding.

6. The "maximum required period" of continuation coverage under COBRA, in the event of a termination of employment resulting in a loss of coverage is ordinarily eighteen months after the date of the termination. 29 U.S.C. § 1162(2)(A)(i). However, Defendant concedes that Plaintiff's maximum period would have been twenty-nine months because he received Social Security disability benefits. (Doc. 30 at 9 (citing 29 U.S.C. § 1162(2)).)

However, like Plaintiff's termination, his entitlement to Social Security benefits was not the cause of the cessation of his coverage under the Group Health Plan. Moreover, COBRA only requires a plan sponsor to provide the opportunity for continued coverage to "each *qualified beneficiary* who would lose coverage as a result of a qualifying event." 29 U.S.C. § 1161 (emphasis added). The Act defines a "qualified beneficiary" as a covered employee's spouse or dependent child who, on the date before the qualifying event, is a beneficiary under the plan. 29 U.S.C. § 1167(3)(A).[7] Thus, when an employee's entitlement to Social Security Benefits results in a loss of coverage under a plan, the plan sponsor only has to provide an offer of continued coverage to the employee's covered spouse and children, not the employee himself. 29 U.S.C. § 1167(3)(A). Consequently, even if Plaintiff's Social Security entitlement were a qualifying event, it would not entitle him to an option to continue coverage for himself.

In sum, neither Plaintiff's termination nor his award of Social Security benefits triggered Defendant's obligation under COBRA to offer Plaintiff continued coverage. Thus, Defendant is **GRANTED** summary judgment on Plaintiff's claims of statutory entitlement to continued medical benefits.

B. *Plaintiff's Claim for Continued Medical Benefits Under Common Law Theories of Waiver and Estoppel*

Plaintiff argues that even if he is not entitled to continued coverage by statute,

he is entitled to such coverage under theories of waiver and estoppel. With ERISA, Congress federalized the regulation of employee welfare benefit plans through a comprehensive statutory scheme. *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1347 (1994). "However, the statute has interstices, and the Supreme Court has noted that Congress expected, in passing the statute, for the federal courts to fill those gaps with 'a federal common law of rights and obligations under ERISA-regulated plans.'" *Id.* (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987)). In developing this common law, federal courts may look to state law for guidance but must ultimately adhere to the policies underlying ERISA. *Nachwalter v. Christie*, 805 F.2d 956, 959–60 (11th Cir.1986). This Circuit recognizes a "very narrow common law doctrine under ERISA for equitable estoppel ...." *Glass*, 33 F.3d at 1347. However, the Court of Appeals has left open whether waiver principles are applicable in ERISA actions. *Id.* at 1348. If waiver is a viable doctrine under ERISA, it is a distinct claim from equitable estoppel. *Id.* at 1347. Accordingly, the Court will address Plaintiff's waiver and estoppel arguments separately.[8]

1. *Waiver*

■ Waiver entails a "voluntary intentional relinquishment of a known right." *Glass*, 33 F.3d at 1347. While the Court of Appeals has left unanswered whether

---

7. Subsection 1167(3)(B) provides a "special rule" for employment terminations or reductions. 29 U.S.C. § 1167(3)(B). In those circumstances, a covered employee is also considered a qualified beneficiary. However, there is no corresponding special rule when the qualifying event is the employee's entitlement to Social Security benefits. Thus, when

a Social Security entitlement results in the loss of group health coverage, qualified beneficiaries are determined by Subsection 1167(3)(A)'s general definition.

8. As Defendant points out, Plaintiff's waiver and estoppel argument is not clearly articulated in his briefs. In his first brief he states,

waiver principles apply in the ERISA context, it has made clear that it will not recognize a " 'something for nothing kind of waiver whereby [insurer] will be held to the terms of its misleading representations for no other reason other than that it made them.' " *Id.* at 1348 (alteration in original) (quoting *Thomason v. Aetna Life Ins. Co.,* 9 F.3d 645, 648 (7th Cir.1993)). The court in *Glass* went on to indicate that a claim of waiver must be supported by evidence of an attempt to reap unjust benefits. *Id.* To illustrate this point, the Eleventh Circuit borrowed the Seventh Circuit's example of an insurer accepting premiums after its defense to coverage was known and clear and only asserting its defense and returning the premiums after it was beneficial because the insured had made a claim. *Glass,* 33 F.3d at 1348 (citing *Thomason,* 9 F.3d at 648, n. 3).

Plaintiff signed the brokerage agreement in May of 2001, however, Defendant did not discontinue his benefits until September of 2003. Additionally, prior to extending Plaintiff six months of medical coverage during the pendency of his appeal, Defendant indicated that Plaintiff was eligible for a period of continued coverage under COBRA. However, Plaintiff has produced no evidence that Defendant intended to relinquish its right to terminate Plaintiff's coverage through these actions. It appears that Plaintiff was provided continued coverage under the Plan despite the fact that he was working under the brokerage agreement due to an oversight by Defendant. Furthermore, at the time Defendant notified Plaintiff that he was entitled to a continuation of coverage under COBRA, it had only provided him with twenty-four months of coverage following his termination. Therefore, Plaintiff was arguably entitled to five months of continuation coverage under COBRA at that time.

Moreover, there is no evidence of any attempt by Defendant to reap unjust benefits from Plaintiff. It provided him coverage at no cost and did not collect any premiums. Thus, finding that Defendant waived its right to discontinue Plaintiff's medical benefits would be akin to holding Defendant to the "terms of its misleading representations for no other reason other than that it made them." *Glass,* 33 F.3d at 1348. The law of this Circuit does not support such a "something for nothing kind of waiver." *Id.* Therefore, Defendant is GRANTED summary judgment on Plaintiff's federal common law claims of waiver.

### 2. *Equitable Estoppel*

 Unlike waiver, the doctrine of equitable estoppel has been explicitly recognized in this Circuit in the ERISA context. Equitable estoppel is applicable in the narrow instances when (1) the provisions of the plan at issue are ambiguous; and (2) representations are made which constitute an oral interpretation of the plan. *Kane v. Aetna Life Ins.,* 893 F.2d 1283, 1285–86 (11th Cir.1990). However, where the insurer's representations seek

---

"[w]aiver is precisely what is [sic] occurred in the instant action." (Doc. 25 at 10.) However, in support of this argument, he cites *Nat'l Cos. Health Benefit Plan v. St. Joseph's Hosp. of Atlanta, Inc.,* 929 F.2d 1558 (11th Cir. 1991), a case dealing primarily with estoppel, not waiver. Further, it is not clear what

actions or representations of Defendant Plaintiff alleges support his waiver and estoppel arguments. Nevertheless, in the interest of thoroughness, the Court will attempt to address his potential claims as to both waiver and estoppel.

to modify a plan, rather than interpret it, estoppel is not available. *Alday v. Container Corp.*, 906 F.2d 660, 666 (11th Cir. 1990); *Nachwalter v. Christie*, 805 F.2d at 960. In other words, while the application of equitable estoppel may result in the enforcement of the insurer's interpretation of an ambiguous portion of the plan, "it will not result in an extension or enlargement of the benefits available under the Plan." *Kane*, 893 F.2d at 1285, n. 3.

█ It is not clear which provisions of the Group Health Plan or Disability Policy Plaintiff argues are ambigous. In fact, it appears that Plaintiff concedes that he was no longer considered disabled under the Disability Policy once he returned to work. (Doc. 35 at 2; Doc. 34 at 1–2.) Further, the Group Health Plan provides that his eligibility for coverage under the Plan was contingent on his classification as a disabled former employee under the Disability Policy. (Doc. 14, Ex. 3. at 8 & 16–17.) Thus, any argument that the Group Health Plan and Disability Policy were ambiguous regarding the discontinuance of premium free medical benefits once Plaintiff returned to work must fail.

Also unavailing is any contention that the Group Health Plan was ambiguous as to Plaintiff's entitlement to a continuation of benefits under COBRA. In his reply brief, Plaintiff argues that the Group Health Plan classifies his becoming eligible for disability benefits under the Social Security Act as a qualifying event. (Doc. 34 at 3.) In support of this argument Plaintiff first cites the following provision from the Plan:

> A qualified beneficiary *other than a covered employee* (covered spouse or dependent child) may elect to continue as a covered person under this plan for not more than 36 continuous months from the date on which any of the following events first occurs: ...
>
> ● the covered employee becoming entitled to benefits under title XVIII of the Social Security Act (Medicare).

(Doc. 14, Ex. 3 at 47 (emphasis added).) In his brief, Plaintiff contends that under this provision he, as a covered employee, could elect to continue his own coverage from the date of his Social Security entitlement. The plain language of the very provision on which Plaintiff relies clearly belies his argument. The above emphasized language unequivocally excludes covered employees such as Plaintiff from the option to continue coverage in the event of their entitlement to Social Security benefits.

Plaintiff also argues that the Group Health Plan represents that his Social Security entitlement was a qualifying event by providing:

> "In the case of a qualified beneficiary who is disabled as determined under the Social Security Act (title II or XVI) and such disability occurred at any time during the first 60 days of continuation coverage, coverage may be continued for 29 months instead of 18 months as set forth in (1) above ...."

*Id.* This provision does not attempt to define a qualifying event as Plaintiff contends. Rather, it merely states that a beneficiary who is otherwise qualified for continuation coverage and is set to receive benefits for 18 months will be offered coverage for 29 months if he is determined to be disabled under the Social Security Act.

In sum, Defendant has failed to show that any portion of the Disability Policy or Group Health Plan is ambiguous. To the

contrary, the documents clearly set forth when Plaintiff's disability and medical benefits would commence and when they would terminate. Additionally, Defendant's obligation to provide continuing coverage under COBRA is properly summarized. Accordingly, Plaintiff's claim of equitable estoppel requests not the enforcement of interpretations of ambiguities but the enlargement of delineated benefits. Under the common law of this Circuit explained above, such a claim cannot stand. *Kane,* 893 F.2d at 1285, n. 3. Therefore, Defendant's motion for summary judgment on Plaintiff's federal claims of equitable estoppel is GRANTED.

### III. *Plaintiff's State Law Claims*

Plaintiff brings various state law claims under theories of breach of contract, ordinary negligence, material misrepresentation, statutory bad faith, waiver, and estoppel. Defendant argues that these state law claims are completely preempted by federal law. Plaintiff implies that his state causes of action regulate insurance, and hence ERISA § 514(b)(2)(A) saves his claims from preemption.[9] (Doc. 25 at 11–12.)

The Supreme Court has stated that "[a]ny state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Aetna Health, Inc. v. Davila,* 542 U.S. 200, 209, 124 S.Ct. 2488, 2495, 159 L.Ed.2d 312 (2004). Thus, § 514(b)(2)(A) cannot save state law claims for benefits from preemption. *Id.* 542 U.S. at 217, 124 S.Ct. at 2500 (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 57, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). Put another way, "[u]nder ordinary principles of conflict preemption, then, even a state law that can arguably be characterized as 'regulating insurance' will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme." *Davila,* 542 U.S. at 217–18, 124 S.Ct. at 2500.

Section 502(a)(1)(B) of ERISA provides that "[a] civil action may be brought by a participant or beneficiary— ... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Pursuant to this provision, "[i]f a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits." *Davila,* 542 U.S. at 210, 124 S.Ct. at 2496.

---

**9.** ERISA § 514(b)(2)(A) reads, "Nothing in this subchapter shall be construed to exempt any person from any law of any state which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). Plaintiff points out that the Supreme Court recently shifted the requirements for a state law to be deemed to "regulate insurance." (Doc. 25 at 11) (citing *Ky. Ass'n of Health Plans, Inc. v. Miller,* 538 U.S. 329, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003).) However, he makes no effort to describe how the state law supporting his claims meets those requirements. In fact, it appears that Plaintiff's counsel misapprehends the law in this area and argues that the state law underlying Plaintiff's claims does not regulate insurance. For example, Plaintiff's response brief states, "Plaintiff's State Court action relies upon garden variety state law causes of action (i.e. breach of contract, statutory bad faith, waiver and estoppel)." (Doc. 25 at 11.) Nevertheless, as set forth below, Plaintiff's state law claims are preempted even if the law on which they are based regulates insurance.

It follows that if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls 'within the scope of' ERISA § 502(a)(1)(B).... In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Id.*

Moreover, where a Plaintiff brings a claim for denial of plan benefits under the guise of an independent state duty, that claim still falls "within the scope of" § 502(a)(1)(B). *Id.* 542 U.S. at 210–214, 124 S.Ct. at 2496–98. For example, the plaintiffs in *Davila* claimed that their insurer violated the Texas Health Care Liability Act ("the THCLA") by denying them coverage for medical expenses. 542 U.S. at 212, 124 S.Ct. at 2497. The Plaintiffs contended that because the duty of ordinary care imposed by the THCLA arose independently of any duty imposed by ERISA or the plan terms, their claims to enforce the THCLA were not within the scope of § 502(a)(1)(B). *Id.* The Supreme Court rejected this argument. *Id.* The Court found that the interpretation of the benefit plan formed an essential part of the THCLA claims and that the insurer's potential liability under those claims derived from the rights and obligations established by the plan. The state law claims were, therefore, not entirely independent of the ERISA regulated plan. *Id.*

542 U.S. at 213–14, 124 S.Ct. at 2498. Consequently, the claims fell within the scope of § 502(a)(1)(B) and were completely preempted by ERISA. *Id.*

■ In the case at hand, though the legal basis for Plaintiff's state law claims is varied, the primary recovery sought through them is consistent. Plaintiff seeks to enforce the provisions of the Group Health Plan and impose liability against Defendant due to its decision to discontinue benefits under the Plan. Thus, like the THLCA claims in *Davila*, Plaintiff's state law claims in this case are not entirely independent of the plan. Rather, the Group Health Plan forms an essential part of Plaintiff's theories of relief, and Defendant's potential liability is based on its administration and interpretation of the plan. Consequently, Plaintiff's state law claims fall within the scope of § 502(a)(1)(B) and are completely preempted. For this reason, Defendant is GRANTED summary judgment on those claims.

## CONCLUSION

No rational trier of fact could find that Plaintiff is entitled to an award of medical benefits under COBRA or under theories of waiver and estoppel. Accordingly, Defendant's motion for summary judgment on Plaintiff's federal claims is GRANTED, and those claims are DISMISSED WITH PREJUDICE. Defendant is also GRANTED summary judgment on Plaintiff's state law claims. Those claims are completely preempted by ERISA, and are, consequently, DISMISSED WITH PREJUDICE. The Clerk of the Court is DIRECTED to CLOSE this case. All remaining motions in this matter are DENIED AS MOOT.